[Civ. No. 20547.   Second Dist., Div. Two.   Mar. 21, 1955.]

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION, Respondent.

Robert W. Walker, John J. Balluff and Robert B. Curtiss for Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, and Edward Sumner, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant is a Kansas corporation. It operates an immense railway system through many states with terminals and repair shops at Barstow and San Bernardino, in California. Only a comparatively short stretch of its track in Iowa and Illinois is designed and equipped for the purpose of operating automatic control equipment which is installed upon the locomotive for the purpose of signalling the engineer and controlling the speed. The parts constituting such equipment include loop and track receivers, each weighing 200 pounds; the equipment box, weighing 300 pounds; the steel cab signal, a fixture inside the locomotive cab; governor, and steel cutoff switch. Each of such parts is so installed in the locomotive as to become an integrated part thereof.

In 1950 and 1951, the Union Switch and Signal Company of Swissvale, Pennsylvania, sold at retail to appellant certain train control equipment repair parts for $68,086.11 for the express purpose of bringing them to San Bernardino and Barstow for storage until installed permanently on appellant's locomotives. At that time, it was the practice of appellant to maintain a 90-day supply of such repair parts on hand, in the California cities. During the same two-year period (1950-1951) the parts so stored in California were integrated by appellant into the automatic train control equipment on its locomotives and thereby became permanent parts of such locomotives although such equipment functions only when the locomotive moves upon the limited mileage that is equipped for its use in controlling the speed. Such equipment is not used on locomotives operating solely in California.

### THE ISSUES

In making returns to respondent for sales and use taxes for the two years, appellant inadvertently included the purchase of the above described repair parts and paid taxes thereon in the sum of $2,042.58. A demand for refund of the tax was duly made. Having exhausted all administrative remedies, appellant instituted this action on the grounds that

(1) the use of the repair parts on locomotives operating in interstate commerce is not subject to the use tax; (2) section 6009.1 of the Revenue and Taxation Code exempts temporary storage and installation of the repair parts from the use tax; (3) the parts were not purchased for use in California, which use is a necessary element to the application of the use tax; (4) the philosophy of the Use Tax Act will not be fostered by applying the tax in this case.

Respondents contend, on the contrary, that (1) nonuse of the equipment in California is immaterial; (2) it was stored in California and was used to make repairs in this state; (3) section 6009.1, *supra,* is not applicable as a statute pertaining only to property used "thereafter out of the state," it being conceded that the trains return to California. The decision of whether the tax was properly chargeable depends upon whether the equipment is a permanent part of the locomotive. If it is not, there is no *use* in California, hence no *use tax*. The finding is that the equipment is a permanent part of the locomotive repaired, although it was stipulated that the use of train control repair parts on locomotives operating in interstate commerce is not subject to the use tax. Therefore, this discussion will be confined to the application of the use tax as it applies to the storage and installation of the parts in California prior to the movement of the repaired locomotives in interstate commerce.

### The Statutes on Use Tax

Four statutes play an important role. They are sections 6008, 6009, 6009.1 and 6201 as they appeared in the Revenue and Taxation* Code in 1950.

*California Sales and Use Tax Law.

Section 6008: "Storage" includes any keeping or retention in this State for any purpose except sale in the regular course of business or subsequent use solely outside this State of tangible personal property purchased from a retailer.

Section 6009: "Use" includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business.

Section 6009.1: "Storage" and "use" do not include the keeping, retaining or exercising any right or power over tangible personal property shipped or brought into this State for the purpose of subsequently transporting it outside the State for use thereafter solely outside the State, or for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to be transported outside the State and thereafter used solely outside the State.

Section 6201: An excise tax is hereby imposed on the storage, use, or other consumption in this State of tangible personal property pur-

Section 6201 made the use tax an excise tax, imposed on "the storage, use, or other consumption in this State of tangible personal property purchased from any retailer . . . for storage, use or other consumption in this State . . ." There is no dispute that (1) the parts were purchased from a retailer; (2) they were to maintain appellant's 90-day supply in California; (3) they were to be withdrawn from the stored supply and installed in appellant's locomotives in California. While the "storage, use or other consumption" occurred in this state, it is not contended by respondents that there was any *use tax* due from appellant upon the use of the repair parts subsequent to their installation in locomotives engaged in interstate commerce. (*Southern Pac. Co.* v. *Gallagher,* 306 U.S. 167 [59 S.Ct. 389, 83 L.Ed. 86] ; *Pacific Tel. & Tel. Co.* v. *Gallagher,* 306 U.S. 182 [59 S.Ct. 396, 83 L.Ed. 595].)

Referring to the first portion of section 6009.1, appellant argues that "if the automatic train control unit into which the repair parts are integrated is treated as separate from the locomotive to which it is attached, it is clear that such unit is used solely outside the State of California after its transportation out of the state." Thereby, appellant disregards the findings as to the purpose for which the parts were shipped.† ■ The last cited section does not exempt the storage of repair parts and the use of them from the use tax. The parts that were taxed were not shipped into California for the purpose of subsequently transporting them into sister states to be used only in them. They were brought to California in order to maintain a 90-day supply of such parts used in repairing, in this state, automatic train control equipment. Not only were they stored here to be used in making repairs, but in truth were in California installed in appellant's locomotives having automatic train control equipment. While section 6009.1 permits the importation into California of tangibles to be transported outside for use in other

chased from any retailer on or after July 1, 1935, for storage, use, or other consumption in this State at the rate of 3 per cent of the sales price of the property, and at the rate of 2½ per cent on and after July 1, 1943, and to and including June 30, 1949, and at the rate of 3 per cent thereafter.

†Finding III. The aforesaid automatic train control equipment repair parts were purchased . . . for the express purpose of bringing them to California, namely, to the cities of San Bernardino and Barstow, for storage in those cities until needed . . . to repair automatic train control equipment installed on some of the locomotives employed by plaintiff in its operations.

states, or to be processed, incorporated into or attached to other personalty to be used beyond the confines of this state, it is to be observed that in the instant controversy, the court found that the automatic train control parts were stored with appellant's 90-day supply, but also were installed in appellant's locomotives in California by attaching them permanently to the automatic train control equipment of such locomotives. Moreover, the locomotives repaired by the parts subjected to the use tax in 1950 and 1951 are used within as well as without the state. Such parts are not removable as an electric bulb from the headlight, but the court found that they became permanent portions of the train control equipment of the locomotives. Not only were they attached by iron anchors and bolts, but the governor is rotated by a spline driven into the axle. To avoid the application of the use tax to the repair parts after they have been stored in California and incorporated into the locomotives, the latter could not have been used inside California.

The repair parts had become permanently incorporated into the locomotives. Therefore, the stored parts cannot be exempt from tax under section 6009.1 on the theory that they were imported into California to be incorporated into other tangibles "to be transported outside the State and thereafter used solely outside the State."

Appellant contends that the time and place of the functional use of the parts so stored among its "90-day" supply and incorporated into its locomotives should be considered. Such interpretation of the taxing statute would require the keeping of records of the time and place of the functional use of each and all of the parts incorporated into and attached to a locomotive and would give rise to interminable difficulties in administering the provisions of section 6009.1.

██ Appellant contends that in order to make the automatic train control equipment repair parts subject to tax, they must have been purchased with the intention of using them in California and they must be used here. (See § 6201.) The findings say nothing to the contrary. They were purchased from a retailer "for the express purpose" of storing them in the California cities to be used "to repair automatic train control equipment installed on some of its locomotives." Subsequently they were so stored and used in California. They became parts of the locomotives, as permanent as the cowcatcher or headlight. Since they became permanent parts of the locomotive repaired, section 6201 does apply. ██ Also,

inasmuch as section 6009.1 requires exclusive use outside the state after the parts are attached, the functional use is irrelevant. ■ The party claiming tax exemption has the burden of showing that it comes clearly within the terms authorizing exemption. (*Pacific Home* v. *Los Angeles County,* 41 Cal.2d 844, 849 [264 P.2d 539].)

The authorities relied upon by the superior court (*Southern Pac. Co.* v. *Gallagher, supra*; *Pacific Tel. & Tel. Co.* v. *Gallagher, supra*) are not so readily distinguishable as suggested. They held that storage and installation in California is sufficiently a local incident, apart from subsequent interstate commerce, to constitute a taxable use under the use tax provision. ■ When 6009.1 was later enacted, the exemption was not worded to exempt property subsequently used in interstate commerce but only exempted property "thereafter used solely outside the state." These words cannot mean "within" or "without" the state or "in interstate commerce."

Judgment affirmed.

Fox, J., concurred.

McComb, J., dissented.

Appellant's petition for a hearing by the Supreme Court was denied May 18, 1955. Schauer, J., was of the opinion that the petition should be granted.

