[No. A031354. First Dist., Div. Two. Feb. 11, 1987.]

ENGS MOTOR TRUCK COMPANY, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*The opinion is certified for publication except for part III, pursuant to rules 976 and 976.1 of the California Rules of Court.

COUNSEL

George F. Jansen for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Patricia Streloff, Deputy Attorney General, for Defendant and Respondent.

## OPINION

SMITH, J.—Plaintiff Engs Motor Truck Company (Engs), a retail truck dealer, appeals following summary judgment for defendant State Board of Equalization (the board) in this action for a refund of sales tax and interest paid under protest. (Rev. & Tax. Code, § 6933, all further section references are to the same code unless stated otherwise.)

The issues are (1) whether trucks sold for ostensible delivery to an out-of-state point must actually be so delivered in order to gain the seller a sales tax exemption under section 6396 of the Sales and Use Tax Law (§ 6001 et seq.), (2) if so, whether the buyer's certification that the trucks will be delivered out-of-state shifts liability for the sales tax to the buyer under section 6421, and (3) whether the board may be estopped to collect the tax on the facts of this case.

### BACKGROUND

The case concerns 42 Peterbilt trucks sold by Engs during March 1976 to May 1978 for shipment by a carrier to designated locations in Arizona where delivery to the buyer was to have occurred. The sales invoice and bill of lading in each instance reflected an Arizona delivery point, and each buyer certified on a Department of Motor Vehicles "Statement of Facts" form as follows (brackets ours): "The above mentioned Vehicle was delivered to me and I took possession and title thereof at [designated Arizona location]. [¶] This vehicle is currently engaged in Inter-State Commerce prior to its return to the State of California and will be so used continuously hereafter."

The deliveries in fact occurred in California. During an audit of Engs, the board discovered postsale service records showing odometer readings too low for the trucks to have been driven to their designated Arizona delivery points and back to their California servicing sites, and a check with some of the buyers confirmed that trucks had been delivered in California.

The board asserted a tax deficiency for the 42 sales. Engs challenged the deficiency determination and, after exhausting its administrative remedies without success, paid under protest. The amount paid was $206,544.58, consisting of $112,524.48 tax and the rest interest.

Engs filed the instant action in superior court after the board denied a refund claim. This appeal by Engs is from a judgment entered in favor of the board after the court denied summary judgment to Engs and granted it as to the board.

Summary judgment may be granted only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We will uphold the judgment. As will appear, those factual questions in this case potentially requiring resolution by trial become immaterial in light of the proper resolution of purely legal questions (*Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670]), and the superior court correctly resolved those legal questions.

I

The initial question for review is whether section 6396, which exempts from the computation of sales tax the gross receipts from tangible personal property sold in interstate commerce, requires actual delivery of the property to an out-of-state point or could reasonably be so interpreted by the board in the exercise of its powers. There is no dispute that the trucks in this case were not actually delivered outside California. ■ The parties accordingly acknowledge that a pure question of law is presented, that is, the applicability of a taxing statute to undisputed facts. (*Montgomery Ward & Co. v. State Bd. of Equalization* (1969) 272 Cal.App.2d 728, 734 [78 Cal.Rptr. 373], cert. den. (1970) 396 U.S. 1040 [24 L.Ed.2d 684, 90 S.Ct. 688].)

Section 6396 provides in pertinent part: "There are exempted from the computation of the amount of the sales tax the gross receipts from the sale of tangible personal property which, pursuant to the contract of sale, is required to be shipped and is shipped to a point outside this state by the retailer by means of: (a) facilities operated by the retailer, or (b) delivery by the retailer to a carrier, customs broker or forwarding agent, whether hired by the purchaser or not, for shipment to such out-of-state point."

Crucial to this case is the language mandating that the property "is required to be shipped and is shipped to a point outside this state" by means of a carrier. Engs contends that the condition "and is shipped" means that the exemption is obtained by mere delivery to the carrier for an out-of-state destination whereas the board contends that actual delivery of the property outside California must occur.

■ The board's interpretation is expressed in its sales and use tax regulations. (Cal. Admin. Code, tit. 18, ch. 2, subch. 4, § 1500 et seq.; all subsequent references to numbered regulations are to the corresponding section numbers of that code and subchapter.) Regulation 1620, captioned "Interstate and

Foreign Commerce," states a general rule that sales tax applies to all sales in this state, regardless of whether the property is subsequently moved outside the state, except where prohibited by the federal Constitution or where the retailer establishes his right to a statutory exemption. (Reg. 1620, subd. (a)(1).) Subdivision (a)(3)(A) then addresses the subject of the section 6396 exemption as follows: "Except as otherwise provided in (B) below [essentially restating the language of section 6396[1]], sales tax applies when the property is delivered to the purchaser or the purchaser's representative in this state, whether or not the disclosed or undisclosed intention of the purchaser is to transport the property to a point outside this state, and whether or not the property is actually so transported. It is immaterial that the contract of sale may have called for the shipment by the retailer of the property to a point outside this state, or that the property was made to specifications for out-of-state jobs, that prices were quoted including transportation charges to out-of-state points, or that the goods are delivered to the purchaser in this state via a route a portion of which is outside this state. *Regardless of the documentary evidence held by the retailer* (see (3)(D) *below)*[2] *to show delivery of the property was made to a carrier for shipment to a point outside the state, tax will apply if the property is diverted in transit to the purchaser or his representative in this state, or for any other reason it is not delivered outside this state.*" (Italics added.)

The regulation is clear and, as applied to the undisputed facts of this case, forecloses the section 6396 exemption since the trucks were, for reasons not disclosed by the record, not delivered to their Arizona destinations. Engs argues, however, that section 6396 clearly does *not* require actual delivery outside California and, hence, that the regulation is a void attempt to alter or amend the statute or impair its scope. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 817 [201 Cal.Rptr. 165, 678 P.2d 378]; *Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032].) We disagree.

---

[1]Subdivision (a)(3)(B) of regulation 1620 provides in part: "Shipments Outside the State—When Sales Tax Does Not Apply. Sales tax does not apply when the property pursuant to the contract of sale, is required to be shipped and is shipped to a point outside this state by the retailer, by means of:
"1. Facilities operated by the retailer or
"2. Delivery by the retailer to a carrier, customs broker or forwarding agent, whether hired by the purchaser or not, for shipment to such out-of-state point. . . ."
[2]Subdivision (a)(3)(D) of regulation 1620 provides in part: "Proof of Exemption. Bills of lading or other documentary evidence of the delivery of the property to a carrier, customs broker, or forwarding agent for shipment outside this state must be retained by the retailer to support deductions taken under (B) above. . . ."

The board has promulgated regulation 1620 in the exercise of its powers. "The standard of our review of the . . . regulation is clear. The Legislature has delegated to the [b]oard the duty of enforcing the sales tax law and the authority to prescribe and adopt rules and regulations. [Citations.] This delegation is proper even though it confers some degree of discretion on the [b]oard. So long as this discretion is exercised within the scope of the controlling statute, the administrative judgment will not be disturbed by the courts. [Citation.] In determining the proper interpretation of a statute and the validity of an administrative regulation, the administrative agency's construction is entitled to great weight, and if there appears to be a reasonable basis for it, a court will not substitute its judgment for that of the administrative body. [Citations.]" (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization, supra,* 35 Cal.3d 811, 816.) Of course, where a statute empowers an administrative agency to adopt regulations, such regulations must be consistent with, not in conflict with, the statute and reasonably necessary to effectuate its purpose. Our limited scope of review is to decide whether the agency reasonably interpreted the statute, not to assess the wisdom of the regulations. (*Ibid.*)

At the outset, Engs argues that the section 6396 phrase "is shipped to a point outside this state" cannot reasonably be read as requiring actual out-of-state delivery because the verb "ship," as commonly defined, means only to place on board or deliver to a carrier for transportation. (See, e.g., Webster's Third New Internat. Dict. (1965) p. 2096 ["to place or receive on board . . . for transportation," "to cause to be transported"]; Black's Law Dict. (5th ed. 1979) pp. 1234-1235 ["to transport; to deliver to a carrier (public or private) for transportation"].) In Engs's view, the language is clear and therefore does not leave room for construction.

The argument is unsound. Our research reveals cases (discussed *post*) in which the word "ship" has been construed as meaning completed shipment where the context and purpose of a statute require it. "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.] *Such purpose will not be sacrificed to a literal construction of any part of the act.* [Citations.]" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672], italics added; see also *People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1], cert. den., 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117].)

In *United States* v. *Alaska Consol. Canneries* (W.D. Wash. 1924) 2 F.2d 614, the district court examined a statute that made it a misdemeanor to " 'ship or deliver for shipment,' " from one state or territory to another, any adulterated or misbranded food or drugs. (*Id.,* at p. 615.) The corporate defendant argued unsuccessfully that an action could only be prosecuted in the state or territory in which the goods were delivered for shipment. Recognizing that the words "ship" or "shipment" generally express the idea of goods delivered to carriers for transportation, the court stated: "But the language of the act is not 'ship,' but 'ship . . . to'; the word 'to' has often the same meaning as 'into,' . . ." (P. 616.) Noting that the act was meant to prevent introduction of the proscribed goods into any state or territory, the court opted for the construction "ship . . . into," reasoning: "[I]t is not reasonable to suppose that Congress was at such pains to punish acts merely leading up to or initiating the shipment or transportation, . . . and at the same time overlooked the forbidden shipment or transportation itself, . . ." (*Ibid.*)

The United States Supreme Court reached a similar result in *United States* v. *Freeman* (1915) 239 U.S. 117 [60 L.Ed. 172, 36 S.Ct. 32], in construing language making it a criminal offense "to '*ship or cause to be shipped* from one State, . . . into any other State, . . . or from any foreign country into any State, . . .' " any intoxicating liquor. (*Id.,* at p. 119 [60 L.Ed. at p. 173, italics added.) As in the *Alaska Consol. Canneries* case, *supra,* the defendant argued that he could not be prosecuted in the state of destination, urging that the offense was "complete when the [liquor was] delivered to the carrier for shipment, . . ." (*Freeman, supra,* 239 U.S. at p. 119.) The Supreme Court rejected the argument and construed the statute as defining a continuing offense that was not completed until delivery of the goods in the state of destination, declining to read "the word 'ship' . . . as if it were 'deliver for shipment.' " (*Id.,* at p. 120 [60 L.Ed. at p. 174].) Noting that the statute outlawed shipments in foreign as well as interstate commerce, the court observed: "Congress did not intend to do anything so obviously futile as to denounce as criminal an act wholly done in a foreign country, such as is the delivery to the carrier where the shipment is from a foreign country into a State. So, if its words permit, as we think they do, the statute must be given a construction which will cause it to reach both classes of shipments, and thereby to accomplish the purpose of its enactment." (*Ibid.*)

■ We conclude that section 6396's language, "is shipped to," does not necessarily prevent a construction requiring actual delivery outside the state. The question therefore remains whether the board reasonably gave the language that interpretation.

■ Like similar provisions of the Sales and Use Tax Law, section 6396 is designed to accommodate federal constitutional restrictions on state taxa-

tion of sales in interstate commerce. ■ "The interstate commerce clause of the Constitution of the United States, article I, section 8 restricts the taxation of sales of goods in interstate commerce. [Citations.] 'A state may require a local seller to collect and remit a tax on receipts from *sales made to out-of-state customers* only if the sale itself can be sufficiently connected with the taxing state. *Delivery within the taxing state* can establish such a nexus.' [Citation.] If delivery occurs in California the transaction constitutionally may be taxed, regardless of any intent to subsequently ship the goods out of state. [Citations.]" (*Satco, Inc.* v. *State Bd. of Equalization* (1983) 144 Cal.App.3d 12, 16 [192 Cal.Rptr. 449]; *Dept. of Treasury* v. *Wood Corp.* (1941) 313 U.S. 62, 68 [85 L.Ed. 1188, 1193, 61 S.Ct. 885].) Thus, California must exempt those sales which, though in other respects transacted in California, are consummated by delivery to the buyer outside the state. ■ Section 6396 makes the necessary accommodation by exempting those sales where delivery, whether made by use of the retailer's own facilities or by a carrier, is to the seller at a point outside the state.

Engs, by its argument that actual delivery outside the state need not occur for the exemption to apply, is asserting that the Legislature has seen fit to go beyond the compulsion of the federal Constitution and exempt any sale in which the retailer places goods in the hands of a carrier for out-of-state shipment, regardless of whether delivery to the seller actually takes place outside the state. Already, the board's contrary position begins to sound reasonable: Why would the Legislature do that and thereby lose sales tax revenues that the state could otherwise have?

Engs has a two-part answer. First, the Legislature would want to relieve the retailer of the burden of ensuring that deliveries are made outside the state; and second, the Legislature has statutorily provided for a shift of tax liability to the buyer in these circumstances so that tax revenue will not always be lost (see § 6421).

As will appear from our discussion in part II of this opinion, however, the Legislature has *not* provided for a shift of liability to the buyer in these circumstances. Thus, in order to sustain Engs's position, we have to believe that legislators were willing to forego the tax revenue completely in order to relieve the retailer's burden. That appears unlikely for several reasons.

Foremost is the structure of section 6396, which requires that property "is shipped to" the out-of-state point by means of either (a) facilities operated by the retailer or (b) delivery to a carrier. The instant case presents situation (b), where the retailer delivers the property to a carrier. One can sympathize with a retailer who so delivers the property in good faith reliance on a bill of lading, and perhaps contractual assurances from the buyer, calling for

shipment to the out-of-state point. The retailer effectively loses control over the transportation, and it could seem unfair to hold the retailer accountable for the tax should the goods be secretly diverted to the buyer at an in-state delivery point. However, there is absolutely no unfairness in situation (a), where the property "is shipped to" the out-of-state point by means of the retailer's own facilities. The retailer in that case retains full control and should be held accountable. Making mere delivery to a retailer's own facilities sufficient to gain the exemption would serve no logical purpose and invite abuse.

Moreover, holding the retailer accountable in cases of shipment by independent carrier is not as burdensome as it might seem. The board accepts bills of lading or other documentary evidence of out-of-state shipment as prima facie proof of exemption, asserting the tax only when, as here, there is evidence that out-of-state delivery did not in fact occur.[3]

Also, as Engs did in this case, the retailer can protect itself against potential tax liability by contractual agreement with the buyer,[4] and it appears that there might be legal recourse against the carrier as well for unauthorized diversion of the property.

In conclusion, Engs has not offered any convincing policy support for its construction of section 6396, and the context of the language "is shipped to," when considered in light of the statute's objective of accommodating the federal Constitution's prohibition against taxing sales in interstate commerce, strongly suggests that actual delivery outside the state is required.

We acknowledge that section 6385, a related provision governing certain sales of tangible personal property to common carriers, states the requirement of out-of-state delivery more explicitly. It exempts such sales when the property is "shipped by the seller via the purchasing carrier under a bill of lading . . . to a point outside this State *and the property is actually transported to the out-of-state destination* for use by the carrier in the conduct of its busi-

---

[3]Subdivision (a)(3)(D) of regulation 1620 provides in part: "Proof of Exemption. Bills of lading or other documentary evidence of the delivery of the property to a carrier, . . . for shipment outside this state must be retained by the retailer to support deductions taken under [subdivision (a)(3)(B)] above. . . ." (See fn. 1, *ante*.)

Subdivision (a)(3)(A) advises, with reference to the foregoing subdivision: "Regardless of the documentary evidence held by the retailer (see (3)(D) below) to show delivery of the property was made to a carrier for shipment to a point outside the state, tax will apply if the property is diverted in transit to the purchaser or his representative in this state, or for any other reason it is not delivered outside this state."

[4]Each of the "Statement of Facts" forms for the sales at issue here contained this signed promise from the buyer: "In the event that California Sales/Use Tax should be levied, I/We [buyer or buyers] do agree to pay same and hold Engs Motor Truck Co. harmless."

ness as a common carrier. . . ." (Italics added; see fn. 8, *post.*) Engs argues that the Legislature could have used the same language in section 6396 and that, since different language was used, a different intent is indicated. (See also § 6387.)

As Engs points out, a familiar canon of construction holds that statutes relating to the same subject should be construed in light of one another and that a word or phrase contained in one but omitted from another thus may signal a different legislative intent. (See, e.g., *Gonzales & Co.* v. *Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172, 178 [198 Cal.Rptr. 479]; *Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 8 [125 Cal.Rptr. 408].) However, application of that rule in this case would achieve a result inconsistent with the evident purpose of section 6396, as just discussed. Further, it would be inconsistent with the result required by other applicable canons of construction.

One such canon is that a court should, if possible, give significance to every word and phrase of the statute. (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645; *Coast Elevator Co.* v. *State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 587 [118 Cal.Rptr. 818], disapproved on another point in *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 , fn. 4 [130 Cal.Rptr. 321, 550 P.2d 593].) To do as Engs suggests, and substitute the phrase "delivered for shipment" for the word "shipped," creates a redundancy. The exemption would apply if the property "is [delivered for shipment] to a point outside this state by the retailer by means of: . . . (b) delivery by the retailer to a carrier . . . for shipment . . . ." (Substitution in brackets.) To paraphrase, the retailer would have to deliver the property for shipment by means of delivering it for shipment. If that were intended, "(b)" could simply read "a carrier," thus accomplishing the same thing without redundancy.

Another canon is that where a word of common usage has more than one meaning, the one which will best attain the purposes of the statute should be adopted, even though the ordinary meaning of the word is thereby enlarged or restricted. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224].) The word "ship" usually means to deliver for shipment, but it is also a synonym for "transport." (Black's Law Dict. (5th ed. 1979) p. 1235.) If section 6396 used the synonym "transport," it would require that property "is transported to" the out-of-state point, and there would be little if any room for argument that actual delivery is not required. Engs in fact relies on the phrase "transported to" in section 6385 as a clear requirement of actual out-of-state delivery. Adopting the meaning "transported" for "shipped" in section 6396 best attains the statutory purpose of exempting those sales which cannot be

constitutionally taxed—that is, those which in fact are in interstate commerce. (See § 6352.)

**(11)** Finally, the interpretation embodied in regulation 1620 has been in effect since the enactment of section 6396 in 1970 (Stats. 1970, ch. 1457, § 1, pp. 2872-2873). As a contemporaneous administrative construction by the agency charged with the statute's enforcement and interpretation, it is entitled to great weight and will be adhered to unless clearly erroneous or unauthorized. (*Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848]; *Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].) Particular respect is due in this case because the board's interpretation is of long standing and has remained uniform. (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) In fact, the board calls our attention to consistent interpretation by the board dating back to the enactment of the Retail Sales Act of 1933 (Stats. 1933, ch. 1020, §§ 1-35, pp. 2599-2612) about 35 years before the enactment of section 6396.[5] We may presume that the Legislature in 1970 was aware of that longstanding interpretation and practice, and because the language of section 6396 does not require a contrary interpretation, we may imply that the Legislature acquiesced in the board's view. (*Coca-Cola Co* v. *State Bd. of Equalization, supra,* 25 Cal.2d 918, 922; cf. *Campbell Industries* v. *State Bd. of Equalization* (1985) 167 Cal.App.3d 863, 869 [213 Cal.Rptr. 533]; *Universal Eng. Co.* v. *Bd. of Equalization* (1953) 118 Cal.App.2d 36, 43 [256 P.2d 1059].)

■■■ We hold that the board's construction of section 6396 as requiring actual delivery outside California (reg. 1620) is valid; we cannot say that it was "arbitrary, capricious or had no reasonable or rational basis." (*Culligan*

---

[5]Ruling No. 26 of the board's Sales Tax Rules and Regulations, issued to implement the Retail Sales Act of 1933, reads in part as follows: "If tangible personal property, pursuant to a contract of sale, is delivered by the retailer at a point outside the State, or is delivered by the retailer to a carrier consigned to a bona fide consignee at a point outside the State *and the property is transported and delivered outside the State,* the transaction is one in interstate or foreign commerce and the gross receipts from the sale of such property are not taxable.

"If tangible personal property is sold and delivered to the purchaser or his representative in this State, the gross receipts from the sale of the property are taxable, even though the disclosed or undisclosed intention of the purchaser is to transport the property outside the State and the property is subsequently transported outside the State.

". . . . . . . . . . . . . . . . . . .

"Bills of lading or other documentary evidence of the delivery of the property to a carrier for shipment outside the State must be retained by the retailer to establish the character of the transaction. If, upon investigation, it is disclosed that the property was diverted in transit, or for other reasons was not transported and delivered outside the State, the retailer selling the property must pay the tax upon the gross receipts from the sale thereof, even though he has obtained bills of lading or other documentary evidence of the delivery of the property to a carrier for shipment outside the State." (Italics added; text partially quoted in *Standard Oil Co.* v. *Johnson* (1944) 24 Cal.2d 40, 45 [147 P.2d 577].)

*Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d 86, 93, fn. 4; *Duffy* v. *State Bd. of Equalization* (1984) 152 Cal.App.3d 1156, 1166 [199 Cal.Rptr. 886].) Therefore, as a matter of law on this record, the truck sales by Engs were not exempt from sales tax.

## II

Engs next contends that, if the sales were not exempt, then liability for paying the tax shifted to the buyers under section 6421 because Engs relied in good faith on the buyers' certification in each case that delivery and transfer of title and possession would take place outside the state. Engs asserts that triable issues of fact exist as to its good faith and the sufficiency of the buyers' certifications to satisfy section 6421. However, we conclude as a matter of law that section 6421 is not applicable and thus that the subordinate factual issues are immaterial.

Section 6421 provides: "(a) If a purchaser certifies in writing to a seller that the property purchased will be used in a manner or for a purpose entitling the seller to regard the gross receipts from the sale as exempted by this chapter from the computation of the amount of the sales tax, and uses the property in some other manner or for some other purpose, the purchaser shall be liable for payment of sales tax as if he were a retailer making a retail sale of the property at the time of such use, and the cost of the property to him shall be deemed the gross receipts from such retail sale. The certificate shall relieve the seller from liability for the sales tax only if it is taken in good faith.

"(b) For purposes of this section, 'use' is the same as defined in Section 6009 without the exclusion defined in the first paragraph of Section 6009.1."

Section 6009, insofar as it is relevant to the facts of this case, states that "use" includes "the exercise of any right or power over tangible personal property incident to the ownership of that property, ..." The "first paragraph" of section 6009.1[6] excludes from "use" the "keeping, retaining or exercising [of] any right or power over" the property for purposes of "subsequently transporting it outside the state for use thereafter solely outside the state" or for purposes of processing, fabricating or manufacturing the property prior to such transporting.

Engs claims that section 6421 applies to a buyer's representations of intended acceptance of delivery outside the state. We disagree. The section

---

[6]What was formerly the first paragraph of section 6009.1 is now the section's only paragraph. (Stats. 1980, ch. 546, § 1, p. 1503, amending the section.)

applies to intended "use" for some purpose, or in some manner, that would make the sale exempt. "Use," as carefully defined for purposes of the section, includes (1) the exercise of any right or power incident to ownership of the property (§ 6009), and (2) an exercise or retention of "right or power" for the purpose of subsequently transporting the property outside the state for use outside the state.

As applied to a buyer, the definition of "use" clearly refers, not to the transfer of possession and title by taking delivery, but to some exercise of right or power over the property *after* that point. Section 6009 refers to use which is "incident" to ownership. Where, as here, title to the property does not pass until delivery to the buyer (*Satco, Inc.* v. *State Bd. of Equalization, supra*, 144 Cal.App.3d 12, 17; see *Standard Oil Co.* v. *Johnson, supra*, 24 Cal.2d 40, 45-46), delivery cannot logically be "incident" to the buyer's ownership.

Similarly, section 6009.1 refers to use by a buyer which follows the taking of possession and title at delivery. (See, e.g., *H. J. Heinz Co.* v. *State Board of Equalization* (1962) 209 Cal.App.2d 1, 4-6 [25 Cal.Rptr. 685]; *Atchison etc. Ry. Co.* v. *State Bd. Equal.* (1955) 131 Cal.App.2d 677, 680-682 [281 P.2d 99].) The section refers to keeping, retaining or exercising some right or power for purposes of "subsequently transporting" the property outside the state or for altering the property before transporting it outside the state. Both situations necessarily imply prior passage of title.

■ The board has interpreted section 6421 as not applying to the section 6396 requirement of out-of-state delivery. Subdivision (a)(3)(A) of regulation 1620, which has been in effect during all periods relevant to this case, provides in part: "*Regardless of the documentary evidence held by the retailer* . . . to show delivery of the property was made to a carrier for shipment to a point outside the state, *tax will apply* if the property is diverted in transit to the purchaser or his representative in this state, or for any other reason it is not delivered outside this state." (Italics added.) Engs argues that the regulation is ambiguous since it states that "tax will apply" without specifying which party, retailer or buyer, is liable. (See also reg. 1500, subd. (c), defining "tax applies" but without reference to who is liable.) However, it is long established that the sales tax, being an excise tax on the privilege of conducting a retail business in this state, is imposed on the retailer, not the consumer. (*Coast Elevator Co.* v. *State Bd. of Equalization, supra*, 44 Cal.App.3d 576, 587; see generally *National Ice etc. Co.* v. *Pacific F. Exp. Co.* (1938) 11 Cal.2d 283, 289-290 [79 P.2d 380].) That being so, it follows that the tax applies to the retailer unless some provision of the law, such as section 6421, expressly states otherwise. (Cf. *Paine* v. *State Bd. of Equalization* (1982) 137 Cal.App.3d 438, 446 [187 Cal.Rptr. 47].)

The board clarified its interpretation of section 6396 in 1977 by promulgating regulation 1667, titled "Exemption Certificates." Subdivision (c)(2) of that regulation provides: "Issuance of Certificates Where Not Appropriate. There are several cases in which certification will not relieve the seller of liability for the sales tax. In such cases, an exemption certificate should not be obtained but rather the facts and documentation of the transaction must support the exemption. For example, a certification to the effect that sales tax does not apply because the property purchased will be exported and shipped out of state, does not relieve the seller of liability for the sales tax. A sale is exempt from sales tax as a sale in interstate or foreign commerce only if the conditions set forth in Regulation 1620 are met, and the seller should obtain the documentation required by that regulation in order to support the exemption." In other words, while documentation must be retained by the retailer in order to support an exemption claim, both the documentation *and the facts* (i.e., actual delivery outside the state) must support the exemption, and a certification of out-of-state delivery from the buyer is inappropriate.

The question for our review is whether regulations 1620 and 1667, in interpreting section 6421 as not allowing for exemption certificates to shift the burden of tax payment to the buyer in this situation, are arbitrary or capricious, or have no reasonable or rational basis. (*Culligan Water Conditioning v. State Bd. of Equalization, supra,* 17 Cal.3d 86, 93, fn. 4.) The foregoing analysis shows that the board's interpretation, in both regulations, is reasonable. We so hold.

Engs relies on *H-R Truck etc. Co.* v. *State Bd. of Equal.* (1958) 166 Cal.App.2d 378 [333 P.2d 151] (hereafter *H-R Truck*), as authority that a sales tax exemption cannot be lost by reason of the postsale conduct of a buyer. The case involved sales of trucks and tractors under the exemption of section 6385, which allows a common carrier to purchase property for delivery to an out-of-state point, and for use in interstate commerce, while acting as its own carrier of the property to the out-of-state point.[7] The sales were found to comport with the facial requirements of section 6385 in that the vehicles were shipped by the retailer via the purchasing carriers under bills of lading specifying consignment to the carriers at out-of-state destinations, and deliveries at those destinations actually occurred.[8] The court,

---

[7] The exemption, by fictionally allowing the carrier to take delivery of the property inside California as a carrier and then take delivery of the property outside the state as a purchaser, puts the carrier on an equal constitutional footing with other out-of-state purchasers. (*Satco Inc.* v. *State Bd. of Equalization, supra,* 144 Cal.App.3d 12, 16-18.) Otherwise, delivery to the purchaser-carrier inside the state would render the sale taxable. (*Id.,* at p. 17.)

[8] Section 6385 provides in part: "There are exempted ... the gross receipts from sales of tangible personal property to a common carrier, shipped by the seller via the purchasing carrier under a bill of lading ..., to a point outside this State and the property is actually transported to the out-of-state destination for use by the carrier in the conduct of its business as a common carrier. . . ."

noting that the language of section 6385 does not mention passage of title or possession, held that the exemption was achieved despite a supportable trial court finding that title to the property had passed to the carriers at the time they took possession of the property in California. (*Id.,* at pp. 381-382; but see *Satco, Inc.* v. *State Bd. of Equalization, supra,* 144 Cal.App.3d 12, 17 & fn. 7.) Any "artificiality" in the transactions, the court concluded, is specifically envisioned and sanctioned by the statute itself. (*H-R Truck, supra,* at p. 382.) Similarly, the court rejected the board's principal contention, that the statute requires a "bona fide relationship of shipper [retailer] and carrier in order for a transaction to achieve exemption." (*Ibid.*) Because a retailer enjoys the legal right to avoid sales tax by relying on the exemption criteria, the court concluded, a retailer's "literal compliance with the statute" does not prove "bad faith" in the sense of tax evasion. (*Ibid.*) Again, any artificiality was contemplated by the statute itself. (Pp. 384-385.)

Finally, and of significance to Engs's argument in this case, the court in *H-R Truck* rejected the board's contention that exempt status as to some of the transactions was lost because certain vehicles—those sold to the carrier Navajo Freight Lines, Inc. (Navajo)—had been used to haul payloads en route to their out-of-state destinations. The court reasoned: "[T]he action of Navajo . . . could not affect the interest of the [retailer] truck company, it not appearing that it had any knowledge, notice or responsibility for the conduct of Navajo. . . . Under these circumstances the truck company cannot be charged a tax by reason of this subsequent conduct of Navajo." (*Id.,* at p. 385.)

Engs sees *H-R Truck* as standing for a general principle that a retailer's sales tax exemption cannot be lost on account of a buyer's subsequent conduct. However, the holding is not nearly so broad. As was explained in *Southern Pacific Equip. Co.* v. *State Bd. of Equalization* (1971) 16 Cal.App.3d 302 [94 Cal.Rptr. 107], a case out of this division, mere literal compliance with section 6385's facial elements is not enough to achieve the exemption; a critical additional inquiry implied in the statutory language is whether the purchaser-carrier exercised such independent control over the property during shipment that the shipment can be characterized as being to a point within, rather than outside, California. (*Id.,* at pp. 305-307.) This court noted that comments in *H-R Truck* about "literal compliance" with the statute being sufficient were made in the context of discussing the irrelevance of the location of passage of title, and bad faith. (*Id.,* at p. 306.)

Similarly, we observe that *H-R Truck*'s discussion of subsequent conduct as affecting the seller's exemption was apparently part of the discussion of bad faith. The court appears to say that, while literal compliance with the exemption criteria is not itself proof of bad faith (*H-R Truck, supra,* 166

Cal.App.2d 378, 382), evidence of collusion between the buyer and seller as to noncomplying use during shipment might be another matter (*id.,* at p. 385). Of course, there was no such evidence in *H-R Truck,* and so the buyer's conduct did not defeat the exemption. (*Ibid.*) Beyond the context of bad faith, the court in *H-R Truck* apparently did not consider what effect Navajo's use of the vehicles en route might have had on the seller's exemption. Accordingly, *H-R Truck* is not authority for the broader proposition urged here. (*Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 127-128, fn. 2 [89 Cal.Rptr. 601, 474 P.2d 417]; *Valentine* v. *City of Oakland* (1983) 148 Cal.App.3d 139, 149 [196 Cal.Rptr. 59].)

▆▆ Engs asserts that to deny application of the section 6421 exemption certificate procedure for purposes of section 6396's out-of-state delivery requirement, while allowing the procedure in other contexts, is arbitrary discrimination having no rational basis and therefore denies Engs equal protection and uniform application of the law. (U.S. Const., 14th Amend.; Cal. Const., art. IV, § 16 [former art. 1, § 11]; see *Montgomery Ward & Co.* v. *State Bd. of Equalization, supra,* 272 Cal.App.2d 728, 765-767.) However, we conclude that the disparate treatment has a rational basis. Where an exemption depends on how the buyer "uses" the property after taking delivery of it (§§ 6009, 6009.1), the ultimate determination of whether the property is eventually "used" in a way which satisfies the exemption statute will often depend on business decisions yet to be made at the time of purchase. The buyer is in exclusive control of those decisions and their timing, thus making the exemption certificate procedure necessary to avoid leaving the retailer in protracted doubt over whether tax will be due. (*Levine* v. *State Board of Equalization* (1956) 142 Cal.App.2d 760, 766-767 [299 P.2d 738] [discussing resale certificates].) By contrast, a retailer whose exemption depends on whether the property reaches its purported out-of-state destination, as required by section 6396, controls the timing and mode of shipment, does not have to depend on unknown subsequent acts of the buyer following delivery outside the state, and can protect himself against possible tax liability through, first, choice of a reputable carrier, and second, contractual agreement that the seller will pay any such tax and penalties later imposed. The distinction, being rational rather than arbitrary, does not offend the state and federal Constitutions.

III*

. . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1458.

DISPOSITION

The judgment is affirmed.

Kline, P. J., and Rouse, J., concurred.