[No. D006576. Fourth Dist., Div. One. June 14, 1988.]

EDKER L. POPE, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

74

COUNSEL

Ronald K. Van Wert for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**BENKE, J.**—We consider whether the sale of a motor home by a California dealer is exempt from sales tax under section 6396[1] of the Revenue and Taxation Code[2] where the contract of sale requires shipment of the motor home out of state, where it is delivered by the retailer to a forwarding agent and removed to a point out of state, but where the vehicle is driven from the state by the purchaser. We conclude under such circumstances the exemption does not apply and the tax is owed.

I

### FACTS AND PROCEDURAL HISTORY

Edker L. Pope is a California retail motor home dealer doing business as Traveland. Pope made sales to out-of-state residents but did not pay sales tax on the transactions, believing they were exempt under section 6396. Fifty-nine such sales are the subject of the present case. After an audit the State Board of Equalization (Board) concluded the sales were not exempt and sought payment of sales taxes it believed were owed by Pope. Pope made partial payments and sought refunds of amounts paid. Pope also filed complaints seeking recovery of the partial payments; the Board cross-complained to recover the balance of the unpaid taxes. All actions were consolidated.

Both parties sought summary adjudication of several issues central to the application of section 6396 to the 59 sales in issue. The parties stipulated to the following facts: "1.   The Plaintiff, a retail dealer of motor homes, sold

---

[1] Revenue and Taxation Code section 6396 reads: "There are exempted from the computation of the amount of the sales tax the gross receipts from the sale of tangible personal property which, pursuant to the contract of sale, is required to be shipped and is shipped to a point outside this state by the retailer by means of: (a) facilities operated by the retailer, or (b) delivery by the retailer to a carrier, customs broker or forwarding agent, whether hired by the purchaser or not, for shipment to such out-of-state point.

"For purposes of this section, the term 'carrier' shall mean a person or firm engaged in the business of transporting for compensation tangible personal property owned by other persons, and includes both common and contract carriers. The term 'forwarding agent' shall mean a person or firm engaged in the business of preparing property for shipment or arranging for its shipment."

[2] All statutory references are to the Revenue and Taxation Code unless otherwise specified.

motor homes to individuals ('purchasers') who were out-of-state residents. [¶] 2. The sales were not reported by Plaintiff as taxable sales. [¶] 3. Plaintiff's ('Traveland') purchase orders reflect an out-of-state address of the purchasers and a $90.00 charge for out-of-state delivery through an entity known as 3-R Transporters. [¶] 4. The sole function of 3-R Transporters on the transactions here was to arrange for the driver of the motor home, a one-way special permit from the Department of Motor Vehicles to transport the motor home out-of-state, and the pick up of the motor home by the driver for delivery out-of-state. [¶] 5. Special permits were obtained from the Department of Motor Vehicles to allow the purchasers to transport the motor home through California without a California license plate. [¶] 6. In numerous cases, the driver of the motor home was the purchaser of the motor home. Such sales were taxable unless exempt under § 6396 of the Revenue and Taxation Code. [¶] 7. The driver picked up the motor home from either Traveland at its place of business in Orange County, California, or from 3-R Transporter[s'] office next door to Traveland. [¶] 8. For at least a part of the period in which sales tax was not paid, 3-R Transporters was not issued a permit as a 'carrier'. 3-R Transporters was not a customs broker for any of the period."

Based on these facts, certain procedural stipulations and the declaration of Pope, the Board requested the trial court determine that "Where the purchaser [is] the driver [the person who drives the vehicle from the state], Traveland is not entitled to exemption from sales tax under § 6396 of the Sales and Use Tax law." Pope asked the court to determine that "Regardless of whether the purchaser was the driver, that as long as the motor home was required to be, and was driven out-of-state, that the sale by Plaintiff was exempt under Section 6396," and that "3-R Transporters did qualify as a forwarding agent for the Plaintiff or purchaser."

The trial court found that where the purchaser drives the vehicle from California, the sale of the vehicle is not exempt from sales tax under section 6396, and that 3-R Transporters did not qualify as a forwarding agent.

Based on these findings, the parties entered into further stipulations for the resolution of the remaining issues in the case, and the parties agreed that as to one set of identified transactions the purchaser was the driver and under the court's prior summary adjudication of issues, judgment should be for the Board. As to another set of identified sales, the evidence demonstrated an out-of-state delivery to the purchaser and the parties stipulated judgment should be for Pope. With regard to a third set of transactions, the issue of location of delivery to the purchaser could not be stipulated to and recourse to the submitted evidence was necessary.

As to the third set of transactions the trial court determined Pope had failed to carry his burden of demonstrating that delivery of the vehicles was made to the purchasers out-of-state and thus sales tax was owed on those transactions.

## II

### Discussion

■■■ The issue here is whether the sale of a motor home in California is exempt from sales tax under section 6396 when the contract of sale requires the motor home be shipped out of state, when the motor home is delivered to a forwarding agent, whether hired by the purchaser or not, and when the motor home is delivered by the forwarding agent to the purchaser in California who then drives it to a point out of state.

Section 6396 makes exempt from sales tax gross receipts from the sale of tangible personal property "which, pursuant to the contract of sale, is required to be and is shipped to a point outside this state by the retailer by means of: (a) facilities operated by the retailer, or (b) delivery by the retailer to a carrier, customs broker or forwarding agent, whether hired by the purchaser or not, for shipment to such out-of-state point." The term "forwarding agent" is defined as a "person or firm engaged in the business of preparing property for shipment or arranging for its shipment." (§ 6396.)

Pope notes section 6396 has no explicit restriction against the forwarding agent using the purchaser as the driver who removes the property to its out-of-state destination. Pope argues the identity of the driver of the vehicle is irrelevant since the crucial factors allowing exemption under the section are a contract requiring out-of-state shipment and the removal of the property from California.

The Board takes a different view. The crucial factor for the Board is delivery of the property to the purchaser. It argues sales tax must be paid when a delivery to the purchaser occurs within the state. Thus, if the carrier, customs agent or forwarding agent turns the property over to the purchaser in California, a delivery has occurred, the property has not been shipped from the state and section 6396 does not exempt the sale from taxation.

Since the section does not on its face address this conflict, it is necessary to interpret section 6396 to determine whether the taking of possession of the property in California by the purchaser, even for the purpose of removing it from the state, makes the sales tax exemption inapplicable. Our task,

of course, is to determine the intent of the Legislature. (Code Civ. Proc., § 1859; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].)

■ In determining the proper interpretation of a statute, the administrative agency's construction is entitled to great weight and if there is any reasonable basis for the construction, the court will not substitute its judgment for that of the agency. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378]; *Engs Motor Truck Co.* v. *State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1464-1466 [235 Cal.Rptr. 117].)

■ There are two expressions of the Board which we may consult to help in determining the Legislature's intent in enacting section 6396. The first is the Board's interpretation of the law as embodied in its use and sales tax regulations. (Tit. 18, Cal. Code Regs., subch. 4, § 1500 et seq.) The second is a memorandum from the Acting Executive Secretary of the Board to the Governor concerning the Board's position on whether the bill creating section 6396 should be signed into law.

These sources clearly interpret section 6396 as denying sales tax exemption when delivery of the property is made to the purchaser in California. Regulation 1620, subdivision (a)(3), and subsections (A) and (B), which we believe must be read together, define the Board's interpretation of when sales taxes apply to the sale of property to be taken from the state. Subsection (A) states a general rule that, except as provided in subsection (B), when property is delivered to the purchaser or his representative in California, the sale is taxable regardless of the intent of the parties to remove the property from this state. The section specifically states: "Regardless of the documentary evidence held by the retailer (see (3)(D) below) [dealing with bills of lading or other documentation showing delivery to a carrier, customs agent or forwarding agent]) to show delivery of the property was made to a carrier for shipment to a point outside the state, *tax will apply if the property is diverted in transit to the purchaser or his representative in this state, or for any other reason it is not delivered outside this state.*" (Italics added.) We read this language regarding the taxability of goods diverted to the purchaser in this state to be applicable to subsection (B) which provides an exception (essentially in the words of § 6396) when a contract requires shipment and when the property is shipped out of state either by the retailer

or by delivery by the retailer to a carrier, customs agent or forwarding agent, whether hired by the purchaser or not.[3]

The regulations reflect an interpretation of section 6396 by the Board that while the section allows a seller and purchaser to avoid sales tax by contracting for the out-of-state shipment of property, and while the shipment may be by a carrier or arranged by a customs agent or forwarding agent hired by the purchaser, it does not allow the exemption when property is delivered to the purchaser in this state. Contrary to the reading of the regulations by Pope we do not read subsections (A) and (B) to allow actual delivery of the property to the purchaser himself in California. While the carrier or customs agent or forwarding agent may be an agent of the purchaser, they are clearly seen by the regulations as agents solely for the purpose of shipping the property to the purchaser out of state. The regulation thus interprets section 6396 as creating only a limited agency allowing the purchaser to arrange out-of-state shipments by carriers or agents of his choice but not allowing actual delivery of the property to him in California.

[3] Title 18, California Code of Regulations, Board of Equalization—Business Taxes, article II, section 1620, subdivision (a)(3), subsections (A), (B), read: "Sales Preceding Movement of Goods From Within State to Points Outside State.

(A) To Other States—When Sales Tax Applies. Except as otherwise provided in (B) below, sales tax applies when the property is delivered to the purchaser or the purchaser's representative in this state, whether or not the disclosed or undisclosed intention of the purchaser is to transport the property to a point outside this state, and whether or not the property is actually so transported. It is immaterial that the contract of sale may have called for the shipment by the retailer of the property to a point outside this state, or that the property was made to specifications for out-of-state jobs, that prices were quoted including transportation charges to out-of-state points, or that the goods are delivered to the purchaser in this state via a route a portion of which is outside this state. Regardless of the documentary evidence held by the retailer (see (3)(D) below) to show delivery of the property was made to a carrier for shipment to a point outside the state, tax will apply if the property is diverted in transit to the purchaser or his representative in this state, or for any other reason it is not delivered outside this state.

"(B) Shipments Outside the State—When Sales Tax Does Not Apply. Sales tax does not apply when the property pursuant to the contract of sale, is required to be shipped and is shipped to a point outside this state by the retailer, by means of:

"1. Facilities operated by the retailer or

"2. Delivery by the retailer to a carrier, customs broker or forwarding agent, whether hired by the purchaser or not, for shipment to such out-of-state point. As used herein the term 'carrier' means a person or firm regularly engaged in the business of transporting for compensation tangible personal property owned by other persons, and includes both common and contract carriers. The term 'forwarding agent' means a person or firm regularly engaged in the business of preparing property for shipment or arranging for its shipment. An individual or firm not otherwise so engaged does not become a carrier, or 'forwarding agent' within the meaning of this regulation simply by being designated by a purchaser to receive and ship goods to a point outside this state. (This subsection is effective on and after September 19, 1970, with respect to deliveries in California to carriers, etc., hired by the purchasers for shipment to points outside this state that are not in another state or foreign country, e.g., to points in the Pacific Ocean.)"

■  Additional insight into the intent underlying section 6396 is found in a memorandum from the Acting Executive Secretary of the Board of Equalization to the Governor concerning the Board's recommendation with regard to approval of the bill creating section 6396. The memorandum stated: "This bill delineates by the use of exemption language the limits of the reach of the California sales tax with respect to tangible personal property shipped out of state. Essentially it represents codification of existing practices and defines the type of shipment which may be used to claim a 'commerce clause' exemption.

"Although we were opposed to an earlier form of the bill, our objection has been overcome by refinement in the language and we believe that the revenue impact will be nil or, at most, minimal. The bill will serve to give certainty to the statutory language whereby retailers may claim sales tax exemption for out-of-state shipment of tangible personal property. We have no objection to the Governor approving AB 1081."

Pope argues that even if the regulations can reasonably be read to exclude sales from the exemption provided by section 6396 when the property is delivered to the purchaser for removal from the state, it conflicts with the true intent of the legislation. Pope argues the creation of the legislation was to stimulate sales in California by making certain types of sales exempt from the sales tax. Pope argues that to tax sales when the purchaser takes possession of the property in California and removes it from the state would thwart this intent. The only basis for this argument is the following statement from "California Tax Legislation 1970," a document prepared by a consultant for the Assembly Committee on Revenue and Taxation: "*AB 1081 (Quimby)* As another measure aimed at stimulating sales in California, AB 1081 exempts the sales of tangible personal property from sales tax when the property is shipped outside of the state by the retailer as required in the contract of sale." The capsule summary, however, misstates the effect of the bill. It appears the Board had long treated as exempt from sales tax those transactions based on a contract of sale requiring delivery of the property out of state and where the retailer arranged for that delivery through his own facilities or through the facilities of the retailer's agent. (See former regs. contained in Cal. Admin. Code, tit. 18, § 2015, subd. (a)(1)(C) (1969).[4]) It is assumed the Legislature was aware of this position

---

[4] Title 18, California Administrative Code, Public Revenues, section 2015, subdivision (a)(1)(C), read: "Exempt Transactions. Sales tax does not apply to sales of property which is:

" . . . . . . . . . . . . . . . . . . . . . .

"(C)   Shipped to a point outside this state, pursuant to the contract of sale, by delivery by the retailer to such point by means of

"1.   facilities operated by the retailer,

by the Board. (Cf. *Engs Motor Truck Co.* v. *State Bd. of Equalization, supra,* 189 Cal.App.3d 1458, 1471.)

This being the case, the significant change made by section 6396 was the provision for shipment by a carrier or customs agent or forwarding agent hired by the buyer. This liberalization of the exemption already utilized by the Board might reasonably have been made to stimulate sales by California retailers by making the required procedures for shipment of the property sold more flexible. We see nothing in this however which would make unreasonable the Board's requirement that the property not be delivered to the purchaser in this state.

Indeed, it is unreasonable to believe the Legislature would have created so technical a device as section 6396, with its provision for delivery to a carrier or customs agent or forwarding agent, if it considered the exemption requirements satisfied merely by a contract requiring out-of-state shipment and removal of the property from the state. If the Legislature meant the exemption to so operate, it could have more easily expressed its intent by simply eliminating all reference to carriers and customs and forwarding agents and required only a contract for shipment and evidence of shipment to the out-of-state location.

While not directly on point, *Engs Motor Truck Co.* v. *State Bd. of Equalization, supra,* 189 Cal.App.3d 1458, supports the conclusion that the section 6396 exemption is lost if the buyer takes actual possession of the purchased property in this state. In *Engs* a California dealer sold 42 trucks under a contract requiring shipment by a carrier to various points in Arizona. The deliveries, however, occurred in California and the trucks were never removed from this state. The dealer argued the sales were nonetheless exempt under section 6396 since the requirement the item be "shipped to a point out of this state" is satisfied when the retailer delivers the property to the carrier for an out-of-state destination. The Board argued actual delivery of the trucks outside California was required. (*Id.* at pp. 1463-1464.)

The court noted that section 6396, like similar sales tax provisions, was designed to accommodate federal constitutional restrictions on the state taxation of sales in interstate commerce. A state can tax a sale made to an out-of-state buyer only if the sale is sufficiently connected to the taxing state. Delivery of the property within the taxing state was a sufficient connection. (*Engs Motor Truck Co., supra,* 189 Cal.App.3d at pp. 1467-1468.)

---

"2.   delivery by the retailer to a carrier for shipment to a consignee at such point, or

"3.   delivery by the retailer to a customs broker or forwarding agent for shipment outside this state."

In order to accept the retailer's argument that a tax exemption would apply under section 6396 even if delivery occurred in California, it was necessary, the court noted, to believe the Legislature had decided to go beyond the restrictions of the federal Constitution and exempt any sale in which the retailer places goods in the hands of a carrier for out-of-state shipment whether delivery to the buyer actually takes place out-of-state. The court concluded it was not reasonable to conclude the Legislature would have so acted since to do so would result in the loss of revenue to which the state would otherwise be entitled. (*Engs Motor Truck Co., supra,* 189 Cal.App.3d at p. 1468.)

The court in *Engs* concluded by observing the interpretation of section 6396, as embodied in regulation 1620, had been in effect since the enactment of the statute. As such the interpretation was entitled to great weight and would be adhered to unless clearly erroneous. The court noted the interpretation was entitled to particular respect in *Engs* since it had remained uniform. Indeed, the court noted the requirement for delivery out of state had been a component of California sales tax law since the Retail Sales Act of 1933. (Stats. 1933, ch. 1020, §§ 1-35, pp. 2599-2612; *Engs Motor Truck Co.* v. *State Board of Equalization, supra,* 189 Cal.App.3d at p. 1471, fn. 5; also see *Satco, Inc.* v. *State Bd. of Equalization* (1983) 144 Cal.App.3d 12, 18-19 [192 Cal.Rptr. 449].)

While *Engs* dealt with the failure to ship the property from the state, and in this case the property was actually removed from the state, we nonetheless believe *Engs* is relevant. If it is required that delivery occur outside the state in order for section 6396 to exempt the transaction from sales tax, then any event which causes delivery to occur in this state defeats the exemption. Whether the purchaser intends to remove the property from the state and whether he actually does so are irrelevant if he takes delivery of the property in this state. We believe this a cornerstone of sales tax theory and see nothing in section 6396 to indicate a desire by the Legislature to eliminate the requirement in the situations covered by the section.

We believe the Board's interpretation of the section in its regulations here is reasonable. When delivery is made to a purchaser of property in California, the transaction is subject to the sales tax even though the contract of sale requires shipment of the property from the state, the property is first delivered to an agent for shipment, and even though the property is then removed from the state.

Finally we deal with Pope's argument that even if delivery by the forwarding agent to the purchaser in California renders the exemption in

section 6396 inapplicable, as to the nine sales on which evidence was presented below Pope satisfied his burden of demonstrating compliance with the section and the regulations interpreting it.

As to the bulk of the 59 sales in question, the forwarding agent listed the driver of the vehicle as the purchaser, however as to the 9 sales on which evidence was presented the documents list the driver as "casual." Pope argues he complied specifically with regulation 1620, subdivision (a)(3)(D)[5] by retaining documentary evidence of his delivery to the forwarding agent of the property for shipment out of state. Having done so Pope argues the burden shifted to the Board to demonstrate the driver was, in fact, the purchaser. We do not agree.

Section 6091 states: "For the purpose of the proper administration of this part and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

█ The rule that the burden of proof concerning the right to a tax exemption is on the taxpayer is also supported by case law. (See, e.g., *Consolidated Accessories Corp.* v. *Franchise Tax Board* (1984) 161 Cal.App.3d 1036, 1039 [208 Cal.Rptr. 74].) Regulation 1620, subdivision (a)(1), states "The retailer has the burden of proving facts establishing his right to exemption." The rule is a reasonable one since the taxpayer is in the best position to create and maintain records of his transactions and to destroy or conceal such records. (*Honeywell, Inc.* v. *State Bd. of Equalization* (1982) 128 Cal.App.3d 739, 744-745 [180 Cal.Rptr. 479].)

█ The evidence is sufficient to support the trial court's finding that Pope had not met his burden of demonstrating the sales exempt under section 6396.

---

[5] Title 18, California Code of Regulations, Board of Equalization—Business Taxes, section 1620, subdivision (a)(3)(D), reads: "Proof of Exemption. Bills of lading or other documentary evidence of the delivery of the property to a carrier, customs broker, or forwarding agent for shipment outside this state must be retained by the retailer to support deductions taken under (B) above. Bills of lading, import documents of a foreign country or other documentary evidence of export must be obtained and retained by retailers to support deductions taken under (C) above."

The judgment is affirmed.

Todd, Acting P. J., and Haden, J.,* concurred.

A petition for a rehearing was denied July 5, 1988, and appellant's petition for review by the Supreme Court was denied September 15, 1988.

* Assigned by the Chairperson of the Judicial Council.