[No. B095911. Second Dist., Div. Three. June 29, 1999.]

YAMAHA CORPORATION OF AMERICA, Plaintiff and Respondent, v. STATE BOARD OF EQUALIZATION, Defendant and Appellant.

344

COUNSEL

Bill Lockyer, Attorney General, David S. Chaney and Philip C. Griffin, Deputy Attorneys General, for Defendant and Appellant.

Bewley, Lassleben & Miller, Kevin Duthoy, Jeffrey S. Baird, Joseph A. Vinatieri and Jason C. Demille for Plaintiff and Respondent.

OPINION

**CROSKEY, J.**—On December 24, 1996, this court filed an opinion reversing the judgment of the trial court in this case, and finding in favor of appellant State Board of Equalization (the Board) and against Yamaha Corporation of America (Yamaha). Thereafter, Yamaha petitioned for a rehearing, which we granted. Following a rehearing, we again held in favor of the Board in our decision, filed February 21, 1997.

Yamaha then petitioned the Supreme Court for review, and its petition was granted. On August 27, 1998, the Supreme Court issued its decision in *Yamaha Corp. of America* v. *State Bd. of Equalization* (1998) 19 Cal.4th 1 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*), holding that we had erred by concluding that the Board's interpretation of sales and use tax statutes, as set out in the Board's Business Taxes Law Guide opinion summaries (the annotations), were entitled to the same high degree of judicial deference as is given to quasi-legislative rules. However, the Supreme Court specifically did not reach the merits of the particular legal question raised by this case (i.e., whether Yamaha had use tax liability for musical instruments and promotional brochures stored in California and shipped as gifts to out-of-state donees) and remanded the cause to us for further proceedings consistent with its views as to the proper standard of review. (*Id.* at p. 15.)

We conclude that while the particular annotations, relied upon by the Board in this matter, are entitled to less weight than quasi-legislative rules,

they nonetheless are entitled to "great weight." In light of factors indicating that the Board's interpretation of the controlling statute, as set out in such annotations, is entitled to great weight, and based on our own independent interpretation of the Revenue and Taxation Code section at issue here, we also conclude, in keeping with our earlier opinion, that the trial court did err in its ruling in favor of Yamaha, and we again reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The Board appeals from a judgment in favor of Yamaha for a refund of use tax and interest thereon. The trial court concluded that certain gifts of stock-in-trade and promotional literature which Yamaha made to out-of-state donees fell within the exclusion from California's use tax that is provided by Revenue and Taxation Code section 6009.1 for "the keeping, retaining or exercising [of] any right or power over tangible personal property for the purpose of subsequently transporting it outside the state for use thereafter solely outside the state . . . ."[1]

The Board challenges the trial court's conclusion that Yamaha did not owe sales or use tax on three separate categories of property which it gave away as promotional gifts to out of state donees. The first was stock-in-trade which Yamaha purchased out of state and gave away out of state. The second was noninventory promotional literature which Yamaha purchased out of state and gave away out of state. The third was additional noninventory promotional literature, which Yamaha purchased in California under resale certificates and gave away out of state.

The facts are uncontroverted. Yamaha is in the business of selling musical instruments that are manufactured by its parent company, Yamaha of Japan. It purchased the instruments that are at issue in this case outside of California without paying tax, placed the instruments into its resale inventory, and later removed them from inventory for the purpose of making promotional gifts to musicians, musical equipment retailers, media and others. In addition, Yamaha purchased certain noninventory promotional literature without paying tax; some of this literature was purchased out of state, and some was purchased in California under resale certificates.

---

[1] Unless otherwise indicated, all further statutory references are to the Revenue and Taxation Code.

Section 6009.1 provides in full that: " 'Storage' and 'use' do not include the keeping, retaining or exercising any right or power over tangible personal property for the purpose of subsequently transporting it outside the state for use thereafter solely outside the state, or for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to be transported outside the state and thereafter used solely outside the state." As we shall discuss, the "storage" and "use" of personal property are subject to use tax. (§ 6201.)

Yamaha gave away some of the musical instruments and promotional literature to donees in California, paid California use tax upon doing so, and concedes such tax was owed. However, respecting other instruments and literature, which Yamaha gave to donees outside California, Yamaha did not report or pay any tax, claiming that the property given to out-of-state donees was not subject to California sales and use taxes under section 6009.1, which excludes from the definition of "storage" and "use," and thus from the requirement of paying a use tax (§ 6201), "the keeping, retaining or exercising any right or power over tangible personal property for the purpose of subsequently transporting it outside the state for use thereafter solely outside the state. . . ."

The Board interpreted section 6009.1 differently from Yamaha, and, after a sales and use tax audit for the period 1984 through 1989, the Board determined that use tax was owing based on the out-of-state gifts. Yamaha paid approximately $700,000 in use tax on the contested transactions and thereafter filed a claim for a refund, which was denied by the Board. Thus, on April 21, 1993, Yamaha filed the instant action, in which it alleged that the Board's taxation of the interstate gifts violated section 6009.1 and California's statutes governing administrative regulations and rulemaking (Gov. Code, § 11340 et seq.), as well as the commerce clause (U.S. Const., art. I, § 8) and the due process clause (Amend. XIV) of the United States Constitution.

The trial court concluded that the gifts at issue were excluded from use tax under section 6009.1. Specifically, the court made the following findings: "The gifts of musical instruments were made out-of-state. The merchandise at issue was delivered by common carriers, with freight charges paid by plaintiff. The gift was not effectuated until it was delivered to the donee, at their out-of-state business or residence. The only use of the property was for the storage and transportation outside the state for use solely outside the state, therefore [it] is excepted from taxation, Revenue and Taxation Code Section 6009.1 [¶] The merchandise was not used as a Marketing Aid within California. There is no evidence presented to indicate that Yamaha used the merchandise within California, except in storage and transportation solely for out-of-state use. Any promotional use of donating the instruments did not occur until its delivery outside the state's borders. As a gift, Yamaha could have revoked the gift prior to its delivery. Any marketing aid use did not occur until it was delivered at its out-of-state destination. [¶] The storage of the merchandise at issue within California was for subsequent use solely outside the State of California. This falls squarely within the exception to taxable storage as prescribed by Revenue and Taxation Code Sections 6008,

and 6009.1." The trial court entered judgment for Yamaha in the amount of $471,868.33, including the refund and prejudgment interest thereon, and this timely appeal followed.

CONTENTIONS

The Board contends that its interpretation of section 6009.1, as expressed in its annotations, is proper and correct, and that therefore, giving its interpretation at least some weight, in the specific circumstances here involved, should cause us to conclude that: (1) Yamaha owed tax respecting the property purchased in California under resale certificates; (2) by delivering property in California to common carriers for transportation to out-of-state donees, Yamaha made a completed gift, and hence a taxable use, of the property in California; (3) section 6009.1 does not exclude the gifts at issue in this case from use tax; and (4) the Board's construction of section 6009.1 does not violate the commerce clause.

Yamaha disputes these contentions. It contends that the Board's interpretation of section 6009.1 is in direct contradiction of that section's plain language, and that when the facts are analyzed by us independently, without reference to the annotations, we would conclude, as did trial court, that its gifts of musical instruments and promotional materials to donees outside California are excluded from taxation.

DISCUSSION

1. *Overview of the Applicable Statutes, Regulations and the Annotations in Question*

"The California Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.) [fn. omitted] embodies a comprehensive tax system created to impose an excise tax for the support of state and local government, on the sale, use, storage or consumption of tangible personal property within the state. [Citation.] [Fn. omitted.] The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property. . . . ' "[A] sales tax is a tax on the freedom of purchase . . . . [a] use tax is a tax on the enjoyment of that which was purchased." ' [Citation.] [¶] The use tax supplements the sales tax by imposing on those subject to it the same tax burden as would otherwise be assessed under the sales tax. [Citation.] For example, the use tax generally applies where a particular transaction is exempt from sales tax, such as one involving goods purchased in another state and stored or used in California. [Citation.] Ordinarily, the use tax does not apply where a resale

certificate is given for purchased goods. However, unless a use tax is assessed, if the goods are not subsequently resold but disposed of in another manner, the purchaser may well manage to avoid taxation altogether. Thus, the use tax insures that the basic excise tax will be levied on transactions which might otherwise inequitably escape taxation." (*Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60, 66-67 [219 Cal.Rptr. 142, 707 P.2d 204].)

Focusing on the specific statutes and regulations that control our decision in this case, sales tax is due on any retail sale of tangible personal property in California unless the sale is specifically exempt by statute. (§ 6051.) A retail sale is a sale for any purpose except resale in the regular course of business. (§ 6007.) All of a retailer's sales are presumed to be taxable retail sales until the contrary is established. (§ 6091.) The retailer has the burden of proving that a sale is not at retail unless the retailer takes in good faith a timely and valid resale certificate. (§ 6091; Cal. Code Regs., tit. 18, § 1668.) A purchaser may validly issue a resale certificate when purchasing property that the purchaser intends to resell, provided that the purchaser will not store or use the property other than for retention, demonstration or display while holding it for resale. (Cal. Code Regs., tit. 18, § 1668.) A purchaser may not issue a resale certificate when purchasing property which the purchaser knows it will not resell. (§ 6094.5; Cal. Code Regs, tit. 18, § 1668, subd. (g).) If a purchaser does so, the purchaser is liable for the sales tax that the seller would have owed but for the seller's acceptance of the purchaser's resale certificate and for an additional penalty. (*Ibid.*)

Use tax is due if a purchaser purchases property under a proper and valid resale certificate but thereafter stores or uses the property other than for retention, demonstration or display while holding it for resale. (§ 6094, subd. (a); Cal. Code, Regs., tit. 18, § 1668, subd. (a)(2).) Similarly, if, for any other reason, sales tax was not paid when personal property was purchased, the purchaser is required to pay a use tax on the storage, use or other consumption of the property in California. (§§ 6201, 6202, 6401.) "Storage" is defined as any keeping or retention of tangible personal property in California for any purpose except sale in the regular course of business or subsequent use solely outside this state. (§ 6008.) "Use" is the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of the property in the regular course of business. (§ 6009.) "Use" includes the making of a gift of property to others, and, if that is the use which a purchaser of property intends at the time of the purchase, then sales tax applies to the purchase, just as the tax applies to a sale for any other intended use. (Cal. Code Regs.,

tit. 18, § 1670.) "Storage" and "use" do not include the keeping, retaining, or exercising any right or power over tangible personal property for the purpose of transporting it outside California for use thereafter solely outside the state. (§ 6009.1.)

██ The Board publishes a Business Taxes Law Guide (2A State Bd. of Equalization, Bus. Taxes Law Guide, Sales & Use Tax Annots. (1998) (Annotations)), which includes annotations to the statutes and regulations. These annotations are opinions by the Board's legal staff and are intended to be used for guidance by the Board itself and tax practitioners. Annotation No. 280.0040 states the view that advertising and promotional material which is brought into the state from elsewhere is subject to use tax when a gift of the material is made and title passes to the donee *in the state*. This annotation further states that the gift is regarded as being a taxable use of the property "[w]hen the donor divests itself of control over the property *in this state*." (P. 3731, italics added.) Annotation No. 280.1140 expresses the view that stock in trade which is purchased for resale is subject to use tax if it is used instead for the purpose of making a gift. The annotation further states that such a gift is a taxable use, and imposition of the tax does not constitute an unconstitutional burden on interstate commerce, "[a]lthough the donor in this state ships the gift to the donee out of state." (Pp. 3750-3751.)

The issue before us is whether the Board's interpretation of the foregoing statutes and regulations, as reflected in its Annotations No. 280.0040 and No. 280.1140 and in its determination of tax in this case, is correct.

2. *Principles Governing Judicial Review of the Board's Interpretation of the Tax Statutes and Regulations*

██ The interpretation of statutes and regulations is a question of law. Accordingly, the Board's interpretation of the sales and use tax statutes and regulations is subject to independent judicial review. (*Yamaha, supra,* 19 Cal.4th at pp. 7-8; *Wallace Berrie & Co.* v. *State Bd. of Equalization, supra,* 40 Cal.3d at p. 65.) ██ Agencies such as the Board may promulgate their interpretation of statutes via two classes of rules—quasi-legislative and interpretive—that, because of their differing legal sources, command significantly different degrees of deference by the courts. (*Yamaha, supra,* 19 Cal.4th at p. 10.) Quasi-legislative rules, promulgated pursuant to a delegation of the Legislature's lawmaking power, have the dignity of statutes, so when a court assesses the validity of such rules, the scope of its review is narrow; if the court is satisfied that the rule in question falls within the lawmaking authority delegated by the Legislature, that the rule is reasonably

necessary to implement the purpose of the statute, and that it is consistent with the controlling law, then judicial review is at an end. (*Yamaha, supra,* 19 Cal.4th at pp. 10-11 & fn. 4.)

In contrast, the other class of administrative rules, those which simply interpret an existing statute, e.g., which give the agency's view of the statute's legal meaning and effect, do not implicate the exercise of a delegated lawmaking power. (*Yamaha, supra,* 19 Cal.4th at p. 11.) "[B]ecause the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues. It is this 'expertise,' expressed as an interpretation (whether in a regulation or less formally, as in the case of the Board's tax annotations), that is the source of the presumptive value of the agency's views. An important corollary of agency interpretations, however, is their diminished power to bind." (*Ibid.*) However, "[b]ecause interpretation is an agency's legal opinion, however 'expert,' rather than the exercise of a delegated legislative power to make law, it commands a commensurably lesser degree of judicial deference . . ." than quasi-legislative rules. (*Ibid.,* italics and citation omitted.)

When an agency is merely construing a statute, as in the case of the annotations here, the question of whether judicial deference to the agency's interpretation is appropriate and, if so, the extent of such deference, is fundamentally situational. (*Yamaha, supra,* 19 Cal.4th at p. 12.) Thus, a court must consider complex factors material to the substantive legal issue before it, the particular agency offering the interpretation, and the comparative weight the factors ought in reason to command. (*Ibid.*) These factors fall into two broad categories: (1) those " 'indicating that the agency has a comparative interpretive advantage over the courts,' " and (2) those " 'indicating that the interpretation in question is probably correct.' " (*Ibid.,* quoting Cal. Law Revision Com., Tent. Recommendation, Judicial Review of Agency Action (Aug. 1995) p. 11 (Tentative Recommendation); see also Asimow, *The Scope of Judicial Review of Decisions of California Administrative Agencies* (1995) 42 UCLA L.Rev. 1157, 1192-1209.)

In the first category are factors that " 'assume the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion. A court is more likely to defer to an agency's interpretation of its own regulation than to its interpretation of a statute, since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over

another.'" (*Yamaha, supra,* 19 Cal.4th at p. 12, quoting Tentative Recommendation, *supra,* at p. 11.) "The second group of factors in the Asimow classification—those suggesting the agency's interpretation is likely to be correct—includes indications of careful consideration by senior agency officials ('an interpretation of a statute contained in a regulation adopted after public notice and comment is more deserving of deference than [one] contained in an advice letter prepared by a single staff member' (Tentative Recommendation, *supra,* at p. 11)), evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' [citation] ('[a] vacillating position . . . is entitled to no deference' [citation]), and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted. If an agency has adopted an interpretive rule in accordance with Administrative Procedure Act provisions—which include procedures (e.g., notice to the public of the proposed rule and opportunity for public comment) that enhance the accuracy and reliability of the resulting administrative 'product'—that circumstance weighs in favor of judicial deference." (*Yamaha, supra,* 19 Cal.4th at pp. 12-13.)[2]

█ The Legislature has not conferred adjudicatory powers on the Board as the means by which sales and use tax liabilities are determined; instead, the validity of those assessments is settled in tax refund litigation like this case. (§ 6933.) Furthermore, the Board has not adopted a formal regulation under its quasi-legislative rulemaking powers purporting to interpret the statute at issue here. "[H]owever, the Board and its staff have accumulated a substantial 'body of experience and informed judgment' in the administration of the business tax law 'to which the courts and litigants may properly resort for guidance.'" (*Yamaha, supra,* 19 Cal.4th at p. 14, quoting *Skidmore* v. *Swift & Co.* (1944) 323 U.S. 134, 140 [65 S.Ct. 161, 164, 89 L.Ed. 124].) Some of that experience and informed judgment takes the form of the annotations published in the Business Taxes Law Guide. Thus, the deference due to the Board's annotations here depends on "a legally informed, commonsense assessment of their contextual merit," which evaluates " 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" (*Yamaha, supra,* 19 Cal.4th at pp. 14-15, quoting *Skidmore, supra,* 323 U.S. at p. 140 [65 S.Ct. at p. 164], italics omitted.)

### 3. *The Weight to Be Given by This Court to the Annotations Here*

As noted above, the weight to be given the annotations here depends on a number of factors. One such factor is whether the agency's construction of a

---

[2]However, even formal interpretive rules do not command the same weight as quasi-legislative rules. (*Yamaha, supra,* 19 Cal.4th at p. 13.)

statute has been consistent over a significant period of time. Here, the Board's view, as expressed in Annotations No. 280.0040 and No. 280.1140, and in its determination of tax in this case, that the gift takes place in California, is not one which the Board adopted ad hoc as a litigating position in this case only, but is one which Yamaha concedes the Board has maintained consistently for at least 20 years. Indeed, it appears to have been in existence for a good deal longer, inasmuch as Annotation No. 280.0040, concerning in-state and out-of-state gifts of promotional materials, was adopted in 1963, and Annotation No. 280.1140, which concerns in-state and out-of-state gifts of stock-in-trade, was adopted in 1967. An agency's consistent maintenance of the interpretation under scrutiny, " 'especially if [it] is long-standing' " is a circumstance which weighs in favor of judicial deference. (*Yamaha, supra,* 19 Cal.4th at p. 13, quoting *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593]; 19 Cal.4th at pp. 20-21 (conc. opn. of Mosk, J.).) As Justice Mosk said in his concurring opinion in *Yamaha,* " 'A written statement of policy that an agency intends to apply generally, that is unrelated to a specific case, and that predicts how the agency will decide future cases is essentially legislative in nature even if it merely interprets applicable law.' " (*Yamaha, supra,* 19 Cal.4th at p. 18, quoting *Tidewater Marine Western, Inc.* v. *Bradshaw* (1996) 14 Cal.4th 557, 574-575 [59 Cal.Rptr.2d 186, 927 P.2d 296] (conc. opn. of Mosk, J.), italics omitted.)

This principle applies to policies embodied in staff legal opinions just as much as to policies set out in formal, quasi-legislative regulations (*Yamaha, supra,* 19 Cal.4th at p. 21 and cases cited there), a rule which is particularly appropriate where, as here, such legal opinions have been collected and made public so that taxpayers can order their transactions according to such policies. As Justice Mosk pointed out in his concurring opinion, the annotations have a special legal status, for when the Board obtained an exemption from the Administrative Procedures Act for the annotations (Gov. Code, § 11342, subd. (g)), it did so with the acknowledgment that the opinions, though addressed to specific tax questions by taxpayers, were intended to be generally applicable to all taxpayers similarly situated, and that the exemption would therefore "permit the department to continue to provide a valuable service to taxpayers. If the rulings were deemed to be regulations, the service would have to be discontinued because of the administrative burdens created by the OAL review process." (Franchise Tax Bd. staff, Enrolled bill Rep., Assem. Bill No. 227 (1983-1984 Reg. Sess.) Sept. 16, 1983, p. 3; *Yamaha, supra,* 19 Cal.4th at pp. 22-23 (conc. opn. of Mosk, J.).) Thus, the passage of the 1983 amendment to Government Code section 11342 evidently was designed to benefit taxpayers by giving them information about

the Board's legal positions on issues such as the one presented by this case, which "facilitat[es] business planning and increas[es] taxpayer certainty about tax law. . . . [and] allows taxpayers subject to the sales and use tax to structure their affairs accordingly, and, if they perceive the need, [to] lobby the Board or the Legislature to overturn these legal rulings." (*Yamaha, supra,* 19 Cal.4th at p. 23 (conc. opn. of Mosk, J.).)

Another important factor is the agency's particular expertise and whether its interpretation is of a statute it enforces, rather than some peripheral law. Professor Michael Asimow, an administrative law adviser to the California Law Revision Commission, whose 1995 article, The Scope of Judicial Review of Decisions of California Administrative Agencies was cited with approval by both the majority and the concurring justice in *Yamaha,* has stated that deference is especially appropriate not only when an administrative agency has particular expertise, but also by virtue of its specialization in administering a statute, which " 'gives [that agency] an intimate knowledge of the problems dealt with in the statute and the various administrative consequences arising from particular interpretations,' " and also when, as in the present case, the agency is interpreting " 'the statute [it] enforces' " rather than " 'some other statute, the common law, the [C]onstitution, or prior judicial precedent.' " (19 Cal.4th at p. 20.) (Asimow, *The Scope of Judicial Review of Decisions of California Administrative Agencies, supra,* 42 UCLA L.Rev. 1157, 1196.)

■ Yet another factor we may consider is the fact that courts should apply a presumption that the Legislature is aware of a consistent and very long-standing administrative interpretation, and thus, the reenactment of the statute being interpreted with no modification designed to make it clear that the agency's interpretation is wrong is a strong indication that the administrative practice was, and is, consistent with underlying legislative intent. (*Yamaha, supra,* 19 Cal.4th at pp. 21-22 (conc. opn. of Mosk, J.), citing *Rizzo* v. *Board of Trustees* (1994) 27 Cal.App.4th 853, 862 [32 Cal.Rptr.2d 892], disapproved on another ground, *Yamaha, supra,* 19 Cal.4th at p. 15; *Thornton* v. *Carlson* (1992) 4 Cal.App.4th 1249, 1257 [6 Cal.Rptr.2d 375]; *Lute* v. *Governing Board* (1988) 202 Cal.App.3d 1177, 1183 [249 Cal.Rptr. 161]; *Napa Valley Educators' Assn.* v. *Napa Valley Unified School Dist.* (1987) 194 Cal.App.3d 243, 252 [239 Cal.Rptr. 395]; *Horn* v. *Swoap* (1974) 41 Cal.App.3d 375, 382 [116 Cal.Rptr. 113].) ■ In this case, as noted by Justice Mosk, the statute under consideration, section 6009.1, has been amended twice since the issuance of Annotation No. 280.0040. (Stats. 1965, ch. 1188, § 1, p. 3004; Stats. 1980, ch. 546, § 1, p. 1503.) The amendments did nothing to suggest that the Legislature had any problem with the Board's interpretation of the section.

Based on these factors, even if, upon the exercise of our independent judgment, we were to determine that the Board's legal counsel did not construe the statute as we do using the independent judgment standard, nonetheless we would conclude that the Board's construction is entitled to "great weight." However, as discussed below, in our independent judgment the Board's construction of the applicable tax statutes, as reflected in the annotations in question here, is correct.

### 4. *Our Independent Judgment as to the Meaning of the Applicable Tax Statutes*

With respect to the musical instruments and promotional literature that were purchased outside of California and later used to make out-of-state gifts, we must address a narrow question: When merchandise is delivered to a common carrier in California for delivery to a donee in another state, does the gift take place in California when the merchandise is delivered to the common carrier, or does it take place in the other state? In the former case, the gift will be subject to California use tax (§§ 6201, 6202; Cal. Code Regs., tit. 18, § 1670, subd. (a)); in the latter, it will not. (§ 6009.1.)

The Board correctly argues that, in certain contexts and for certain purposes, a gift is deemed to be made when the subject property is delivered to a third party for the benefit of the donee. (*Berl* v. *Rosenberg* (1959) 169 Cal.App.2d 125, 130 [336 P.2d 975] [delivery by deceased to third party for the donee's benefit results in a completed gift]; *White* v. *Bank of America* (1942) 53 Cal.App.2d 831, 833 [128 P.2d 600] [same].) However, the Board overstates its case when it seems to argue that *Berl* v. *Rosenberg* and *White* v. *Bank of America* establish as a generally applicable rule of law that a gift necessarily is complete upon delivery to a third party for the donee's benefit.[3] However, these cases and many others to the same effect certainly establish what should be sufficiently established by common sense—that it is not unreasonable to deem a gift to be made upon delivery to a third person, including a common carrier, for subsequent delivery to the donee. Moreover, a plain and good reason exists for deeming the gifts at issue in this case to have been complete upon delivery to the common carrier in California, for if they were not, at least on the state of this record, Yamaha will escape paying any tax on the subject property—the precise result which

---

[3]*Standard Oil Co.* v. *Johnson* (1944) 24 Cal.2d 40 [147 P.2d 577], cited by Yamaha, is inapposite. That case merely holds that, when a contract of sale so provides, a *sale* is complete only upon actual delivery to the transferee by a common carrier. (*Id.* at pp. 45-46.) This principle says nothing about when a *gift* must be deemed complete where, as Yamaha admits was the case with the gifts at issue here, no provision as to that question is made in a contract of sale or otherwise.

the use tax statutes were enacted to prevent. (*Wallace Berrie Co.* v. *State Bd. of Equalization, supra,* 40 Cal.3d at p. 67.)[4]

Yamaha contends, however, that the Board's view, that delivery to a common carrier for transfer to an out-of-state donee results in a taxable gift in California, violates the clear language of section 6009.1, as well as the interstate commerce clause, and is thus a clearly erroneous interpretation of the statute. We do not agree. The plain language of section 6009.1 clearly exempts out-of-state uses of property, including gifts, from California's use tax, but is silent on the issue here, to wit, at what point has a gift been made within the state of California for purposes of the application of the use tax. Section 6009.1 simply does not explicitly address whether gifts of the kind at issue in this case, which are given to a common carrier in California for delivery to an out-of-state donee, do, in fact, constitute a "use . . . solely outside the state." Nothing in the statutory language provides guidance on this issue, and therefore Yamaha relies on various cases defining "use . . . solely outside the state" as authority for its proposition that its delivery of property to a common carrier for delivery outside California is such a use.

However, none of the cases cited by Yamaha, *Atchison, etc. Ry. Co.* v. *State Bd. of Equal.* (1955) 131 Cal.App.2d 677 [281 P.2d 99], *H. J. Heinz Co.* v. *State Board of Equalization* (1962) 209 Cal.App.2d 1 [25 Cal.Rptr. 685], and *Parfums-Corday, Inc.* v. *State Bd. of Equalization* (1986) 187 Cal.App.3d 630 [232 Cal.Rptr. 56], support its argument that section 6009.1 prohibits taxation of the specific gifts that are at issue in this case. In each of those cases, the taxpayer claimed that its use of certain property was excluded from tax under section 6009.1 because such use was made solely outside of the state. In *Atchison, etc. Ry. Co., supra,* 131 Cal.App.2d 677, the taxpayer claimed that certain repair parts for its automatic train control equipment, which it installed on its locomotives in California, were nevertheless excluded from tax under section 6009.1 because the equipment only operated when the trains were on a specially equipped stretch of track in Iowa and Illinois. The Court of Appeal rejected this argument and concluded the equipment was "used" in California for its intended purpose, namely, to repair the taxpayer's locomotives. (131 Cal.App.2d at p. 680.) In *H. J. Heinz Co., supra,* 209 Cal.App.2d 1, the taxpayer made a similar claim—that section 6009.1 excluded from California use tax certain cans and cardboard cases in which the taxpayer temporarily stored its tomato products before

---

[4]Although Yamaha urges that it *might* have to pay taxes to the state in which the donee lives, it did not put on any evidence below that it had paid, or that it was being required to pay, any such taxes. Thus, the only evidence before the trial court was that, if the use tax did not apply, Yamaha would not pay any taxes on the property given to the donees.

shipping the products to the east coast for further processing. The court concluded the containers were used for their intended purpose in California. (209 Cal.App.2d at pp. 5-6.) Finally, in *Parfums-Corday, Inc., supra,* 187 Cal.App.3d 630, the taxpayer contended that section 6009.1 excluded from tax certain display cases which the taxpayer shipped without consideration to out-of-state vendees of its merchandise, because the cases were to be used by the vendees outside the state. The Court of Appeal disagreed and concluded the display cases were used in California, because they were assembled here and prepacked with merchandise before shipment. (187 Cal.App.3d at pp. 637-638.)

Yamaha contends the decision in each of the foregoing cases was based upon the fact that the taxpayer made a "functional use" of the property within California by, in effect, installing the subject railroad equipment on a locomotive (*Atchison, etc. Ry. Co.* v. *State Bd. of Equal., supra,* 131 Cal.App.2d at p. 680), filling the subject containers with tomatoes (*H. J. Heinz Co.* v. *State Board of Equalization, supra,* 209 Cal.App.2d at pp. 5-6), or assembling the subject display cases and packing them with cosmetics. (*Parfums-Corday, Inc.* v. *State Bd. of Equalization, supra,* 187 Cal.App.3d at pp. 637-638.) Yamaha contends that it made no "functional use" of the musical instruments and promotional literature that it sent out of state as gifts, because it simply sent the property to the out-of-state donees in its original packaging and made no physical change of any kind in it. We reject this argument. Yamaha concedes that a gift is a "use." A gift is thus subject to use tax if the gift is made in California, whether or not a "functional use" of any other kind is made of the property. Thus, if the gifts at issue in this case can properly be considered to have been made in California, they were taxable.

In connection with its argument that the gifts were not made, in other words, were not completed in California, Yamaha relies on the case of *Stockton Kenworth, Inc.* v. *State Bd. of Equalization* (1984) 157 Cal.App.3d 334 [203 Cal.Rptr. 698]. However, *Stockton Kenworth* does not support Yamaha's claim that its gifts to out-of-state donees were not completed within California. In *Stockton Kenworth,* the Court of Appeal agreed with the taxpayer's claim that section 6009.1 excluded from use tax the taxpayer's transportation of several trucks out of state, where the taxpayer leased the trucks to an out-of-state lessee. The court found invalid a regulation which required the trucks to be towed out of state, rather than being driven on their own power, in order for section 6009.1 to apply; the court found this to be an unreasonable interpretation of the statute. (157 Cal.App.3d at pp. 338-339.) Yamaha contends our decision should follow that of the court in *Stockton*

*Kenworth*, because in both cases, the transaction sought to be taxed consisted solely of transporting property out of the state for use in another state. We do not agree. While the *Stockton Kenworth* court might have found the regulation at issue in that case unreasonable, that is not the same as finding it "clearly erroneous or unauthorized" under the statute. Furthermore, and more to the point, *Stockton Kenworth* did not deal with the question here: when is a gift made for purposes of determining if a use tax is due?

When a taxpayer makes a gift of property, the taxpayer has exercised its right to transfer title to the property, and hence the making of a gift is a use. (§ 6009 [defining "use" as the exercise of any right or power over tangible personal property incident to the ownership of that property, except for a sale of the property in the regular course of business].) If the gift was made, that is, if it was complete upon delivery to the common carrier, then there *was* a taxable use in California, given that section 6009.1 excludes from taxation only those acts by which a taxpayer exercises any right or power over tangible personal property for the purpose of subsequently transporting the property outside of the state "for use thereafter solely outside the state."

Yamaha contends that there can be no completed gift until there has been both a delivery and an acceptance, and that because delivery to and acceptance by out-of-state donees necessarily occurs outside California, there has been no gift completed or made within the state, and thus no taxable use. In particular, it contends that its delivery to the common carrier was not sufficient relinquishment of its dominion and control over the property to constitute an effective delivery for gift purposes, citing to authorities related to the law of bailment and agency.[5] We first discuss the element of delivery.

[5]Specifically, Yamaha argues that because it *could* have told the common carrier, at any time up until actual delivery, not to make the previously directed delivery of property to the out-of-state donees, there was no relinquishment of control over the property and therefore no completed gift until the property was actually in the hands of the out-of-state donees. However, there was no evidence that Yamaha ever did attempt to recall any deliveries to the out-of-state donees, and the parties stipulated that Yamaha did not contend that any of its property was returned to California. Thus, Yamaha's reliance on *U.S.* v. *Alcaraz-Garcia* (9th Cir. 1996) 79 F.3d 769 is clearly misplaced. In *U.S.* v. *Alcaraz-Garcia*, the issue was whether persons who attempted to make gifts of funds to their families in Mexico by delivering such funds to a "gratuitous bailee" had a *right* to attempt to reclaim such funds which had been seized by the government and declared forfeited when the bailee crossed the American/Mexican border without properly reporting the funds he carried. The court in that case held that the donors had established a right to the funds superior to that of the defendant/gratuitous bailee, in other words, they were innocent owners of the funds within the meaning of 18 United States Code section 981(a)(2), for purposes of petitioning for an amendment of the forfeiture order returning such funds to them. Here, unlike in *U.S.* v. *Alcaraz-Garcia,* there is no issue as to the priority of rights to property, and the court in *U.S.* v. *Alcaraz-Garcia* was

■ Delivery is an essential element of a completed gift. "Case law has defined the elements of a gift as follows: (1) competency of the donor to contract; (2) a voluntary intent on the part of the donor to make a gift; (3) delivery, either actual *or symbolical*; (4) acceptance, [either] actual *or imputed*; (5) complete divestment of all control by the donor; and (6) lack of consideration for the gift. [Citations.]" (*Jaffe* v. *Carroll* (1973) 35 Cal.App.3d 53, 59 [110 Cal.Rptr. 435], italics added.) It is the *intent* with which the delivery is made which is the primary essential, for unless the donor *intends* to divest itself completely of control and dominion over the property, the gift is incomplete. (*Union Mutual Life Ins. Co.* v. *Broderick* (1925) 196 Cal. 497, 502-503 [238 P. 1034]; *Estate of Raphael* (1953) 115 Cal.App.2d 525, 533 [252 P.2d 979].) The purpose of requiring some specific form of delivery, whether constructive, symbolic, actual or otherwise, is to protect "the property of the individual from ill-founded and fraudulent claims of gift by requiring strong concrete evidence that he [or she] really intended to part with [the] property." (*Gordon* v. *Barr* (1939) 13 Cal.2d 596, 601 [91 P.2d 101].) The precaution of requiring an unambiguous delivery is "especially desirable when, as is frequently the case, the alleged donor is dead at the time the claim is asserted," or to protect potential donors from "ill-considered or impulsive donations" of their property by highlighting the significance of their acts. (*Ibid.*)

■ Here, we are not dealing with a dispute over whether a decedent made a gift, nor with an alleged donor who now claims that he or she was confused or tricked into parting with his or her property. Instead, we are dealing with a business enterprise which is, and was, perfectly capable of presenting evidence as to whether it intended to make a gift or not at the time it handed its property over to a common carrier for delivery to an out-of-state donee. Not surprisingly, there is no evidence in the record (which consists of stipulated facts) that at the time Yamaha gave the common carrier its property, addressed for delivery to out-of-state donees, it did not intend to make a gift of such property. The evidence, in fact, is to the contrary, given that the product loan/giveaway authorization forms, which were made part of the stipulated record, clearly indicate that the property in question was to be shipped by common carrier to various entities for "giveaway promotions."

Although Yamaha contends that its unexercised right to recall delivery of its property until it was actually received by the donee prevented the gift from being complete upon delivery to the common carrier, it cites to no

not concerned with whether there was ever a sufficient relinquishment of control over property to constitute a completed gift.

evidence that it *intended* to retain any control over the property after it was delivered to the common carrier. The mere retention by the donor of some indicia of control over a gift, standing alone and without any evidence concerning the intent behind such retention of control, is a neutral factor which does not assist either the donor or donee on the question of whether there has been a completed gift, and despite such retention of potential control over property, if other essentials of a completed gift exist, the gift is not thereby affected or invalidated. (*Jaffe* v. *Carroll, supra,* 35 Cal.App.3d 53, 60, and cases cited there.) ▮ Although California decisions often speak in terms of "absolute and unconditional delivery" and "transfer of complete dominion and control," thus implying that the retention of *any* power over property (for example, the power to recall the delivery before it has been received) precludes a completed gift, a review of gift cases shows that these terms are used perhaps too broadly, *for as long as the donor's acts unequivocally show that it intended to divest itself of ownership in the property,* the gift will be upheld. (*Gordon* v. *Barr, supra,* 13 Cal.2d 596, 601-602.) Furthermore, where there has been unequivocal proof of a deliberate and well-considered donative intent on the part of the donor, many courts have been inclined to overlook the technical requirements and to hold that even a "constructive" or "symbolic" delivery is sufficient to vest title in the donee, as long as the evidence clearly shows an intention to part presently with some substantial attribute of ownership. (*Gordon* v. *Barr, supra,* 13 Cal.2d at p. 601.)

As to the element of acceptance, under California law, it is presumed a gift beneficial to the donee is accepted, even without the donee's knowledge or consent. (*Estate of Kalt* (1940) 16 Cal.2d 807, 813 [108 P.2d 401, 133 A.L.R. 1424] [" 'There is no intrinsic difficulty in regarding a conveyance as effective to vest property in the grantee even before the latter has consented to receive it' "]; *Kropp* v. *Sterling Sav. & Loan Assn.* (1970) 9 Cal.App.3d 1033, 1046 [88 Cal.Rptr. 878].) Such presumed acceptance is deemed to have occurred at the time the donor first handed the property over to a third person for delivery to the donee. (Civ. Code, § 1059, subd. 2; *Windiate* v. *Moore* (1962) 201 Cal.App.2d 509, 514-515 [19 Cal.Rptr. 860]; *Neely* v. *Buster* (1920) 50 Cal.App. 695, 700 [195 P. 736], and cases cited there.)

" '[W]hether a gift is complete and effectual is a question of fact to be determined from all the evidence.' [Citation.]" (*Jaffe* v. *Carroll, supra,* 35 Cal.App.3d 53, 61.) ▮ The evidence here supports only these findings on the issues of intent, delivery and acceptance: that when Yamaha handed over its property to a common carrier for delivery to out-of-state donees, it intended, at the time it handed each piece of property over to the carrier, to

make a gift; that it had no intent to recall any of gifts from delivery, and, in fact, never did recall any deliveries; and that the gifts, being beneficial to the donees, were effectively accepted by them at the time Yamaha handed each gift over to the common carrier for delivery. Therefore, we conclude that Yamaha made completed gifts in California, even though the donees were located outside the state.

Notably, we have found two published cases in which this same issue was presented for resolution, both of which reached the same conclusion as we that a gift which is mailed or sent out-of-state is made, for purposes of a taxable "use" of the donated property, in the state in which the donor turns it over to a common carrier or post office, regardless of any argument that there is not a completed gift made within the taxing state. In one case, *McGraw-Hill, Inc.* v. *State of New Jersey, Department of the Treasury, Division of Taxation* (1987) 9 N.J. Tax 372, this conclusion was based on an analysis which focused not on when a gift is complete, but instead on an analysis of where the taxpayer had manifested a change of intention as to its intended use of the property. In the other case, *Hoffman-LaRoche, Inc.* v. *Porterfield* (1968) 16 Ohio St.2d 158 [243 N.E.2d 72], the analysis focused on when a gift is deemed completed.

In *McGraw-Hill, Inc.* v. *State of New Jersey, Department of the Treasury, Division of Taxation, supra,* 9 N.J. Tax 372, the taxpayer, McGraw-Hill, purchased book components outside of New Jersey, which components were made into books and stored as inventory in McGraw-Hill's New Jersey warehouse and held for resale. No sales or use tax was paid on this basis. McGraw-Hill thereafter donated the books to a charitable organization. After the director, division of taxation imposed a deficiency use tax assessment on McGraw-Hill on the cost of the books so donated, McGraw-Hill brought an action contesting the tax. One of its many arguments was that if the transactions were gifts, then any gifts to out-of-state charities did not take effect in New Jersey, and therefore they were not subject to use tax by New Jersey. (*Id.* at p. 379.)

New Jersey defined "use" as "[t]he exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or keeping or retention for any length of time, withdrawal from storage, any distribution, any installation, any affix-ation to real or personal property, or any consumption of such property." (N.J. Stat. Ann. § 54:32B-2(h).) Use tax in New Jersey is imposed on property which has not already been or will be subject to sales tax, except that "the mere storage, keeping, retention or withdrawal from storage of

tangible personal property by the person who manufactured, processed or assembled such property shall not be deemed a taxable use by him." (N.J. Stat. Ann. § 54:32B-6.)

The court in *McGraw-Hill* made the following salient observations:

"It is important to recognize the difference between the sales tax and the use tax. Sales tax is imposed on a commercial transaction, a purchase for consideration. The use tax is a tax complementary to the sales tax as an aid to its enforcement. It is a tax on possession and enjoyment of that which was purchased and for which no sales tax was paid. [Citation.]

*"The subject case turns neither on the nature of the gifts nor the fact that some gifts were made to out-of-state donees, but on the fact that a change of intention occurred in New Jersey, manifested by taxpayer's withdrawal of tangible personal property from storage for gift, rather than resale, purposes. This change of intent was evidenced by instructions to the Hightstown distribution center to segregate the books and have them shipped to the charitable donee, and the carrying out of these instructions by taxpayer taking all steps necessary in New Jersey to complete the gifts. So long as the books were held in inventory with the intent to resell, they were not subject to use tax, but once taxpayer took steps to use the books for gift purposes, they were removed from the protection of § 2(e) and became subject to use tax under § 6.*

"Section six provides that 'mere storage, keeping, retention or withdrawal from storage of tangible personal property by the person who manufactured, processed or assembled such property shall not be deemed a taxable use by him.' [Emphasis omitted.] This wording indicates that goods placed in storage or withdrawn from storage are not subject to use tax. But, these words must be read in the context of the entire act, and particularly § 2(h), which includes storage or withdrawal from storage in the definition of 'use.' Placing in or removing from storage within the resale chain (for instance removal for transfer to another warehouse, or to a distributor or retailer) is not a taxable event, but *removal from storage for the purpose of using the property subjects the user to use tax.* The word 'mere' limits the nontaxable status. In this case the withdrawal is not a 'mere' withdrawal but is coupled with instructions to remove from storage and the removal from storage and delivery of the books to a common carrier for shipment for a non-resale purpose.

"Although it may appear severe to impose a use tax on a gift, this treatment is consistent with statutory requirements. If I give tangible personal property, for instance, a television set, to a charity, I must pay a sales

tax when I acquire the set. The fact that I could have restructured the hypothetical transaction and given cash to the charity, and the charity could then have purchased a television set without paying a sales or use tax, does not justify a finding in the subject case that no use tax is due. [Citation.] Further, if a manufacturer of television sets withdraws a set from its warehouse for its own use, whether it be for use in an employees' lounge or to be given away for promotional purposes or to a charity, a use tax must be paid on this withdrawal if no sales tax was paid by the manufacturer on the purchase of the component materials. The product is no longer being held for resale and therefore is not exempt from tax on the purchase, either as a finished product or as component parts or raw materials. This is the scheme of the Sales and Use Tax Act.

"In the subject case, taxpayer is giving tangible personal property to a charity without having paid sales tax to acquire the property. I conclude that the *withdrawal of the books from inventory for the purpose of making a gift and the delivery of the books to the common carrier for shipment to the donee are the events which subject the donated books to use tax. The fact that some books were shipped out of the state, where title passed, does not affect this taxability since the devotion to the non-resale use occurred in New Jersey.*

"Taxpayer's contention that no use tax can be imposed by New Jersey because the books are shipped by common carrier and insured by taxpayer during transit, with title passing on receipt in the donee's state, is grounded in Commerce Clause concepts which apply to sales to out-of-state customers. The Commerce Clause is concerned primarily with the avoidance of multiple or burdensome taxation on interstate commerce. In the subject case, there is no allegation that a sales or use tax has been paid to any other state, either on the component materials or on the finished product. Normally, if there is no sale, no other state can impose a sales or use tax on the charitable donee. If, by reason of the passing of title in another state, a use tax is sought to be imposed on the taxpayer-donor, the principles of *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), reh'g den. 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977), would be applicable. Since a use tax has been imposed by New Jersey on the donor, presumably the tax credit provision of the sales and use tax act of the donee's state would prevent multiple taxation of the donor. If the donee's state has no tax credit provision, there would be a serious doubt as to the validity of that state's sales and use tax act because it would not be 'fairly apportioned' as required by *Complete Auto*. See *KSS Transp. Corp.* v. *Taxation Div. Dir.*, 9 N.J. 273 (Tax Ct. 1987) (Appellate Division appeal pending)." (*McGraw-Hill, Inc.* v. *State of New Jersey Deprtment of Treasury, Division of Taxation, supra*, 9 N.J. Tax at pp. 382-384, italics added.)

In *Hoffman-LaRoche, Inc.* v. *Porterfield, supra,* 16 Ohio St.2d 158 [243 N.E.2d 72], the case which applied a completed gift analysis, the taxpayer, a manufacturer of pharmaceutical products, promoted the sale of its products in Ohio in two ways: (1) its field representatives carried and gave away samples of its products with other promotional materials, and (2) it periodically mailed, from outside Ohio, such samples and promotional materials to doctors and hospitals inside Ohio. Ohio's tax commissioner levied a use tax on all such samples and promotional materials, and Hoffman-LaRoche appealed. It ultimately conceded that the materials disseminated by its field representatives were taxable, but continued to assert that the items mailed from outside Ohio were not taxable. (16 Ohio St.2d at p. 159 [243 N.E.2d at p.73].)

In Ohio, just as in California, "use" means the exercise of any right or power incidental to the ownership of the thing used. (Compare Ohio Rev. Code Ann. § 5741.01(C), with Rev. & Tax Code, § 6009.) A consumer who stores, uses, or otherwise consumes in Ohio tangible personal property purchased for such purpose, is liable for the tax. (Ohio Rev. Code Ann. § 5741.02(B).) The board of tax appeals reduced the use-tax assessment levied by the tax commissioner, concluding that the material mailed from a state other than Ohio was not stored, used or otherwise consumed by the taxpayer in the state of Ohio. The tax commissioner appealed, arguing that because Hoffman-LaRoche sent the materials into Ohio by way of the postal service, it did not divest itself of possession and control of the materials outside Ohio, because postal regulations gave it the right to recall the mail at any time prior to delivery, and that the post office was thus the taxpayer's agent. (16 Ohio St.2d at p. 161 [243 N.E.2d at p. 74].)

The Supreme Court of Ohio disagreed with this contention, noting that there was authority in many jurisdictions that delivery of a gift is completed at the time it is deposited in the mail for delivery to the intended recipient. (16 Ohio St.2d at pp.161-162 [243 N.E.2d at p. 74].) It also noted that there was no evidence that the taxpayer had ever attempted, or would ever attempt, to recall any of the promotional materials it had sent through the mail. (16 Ohio St.2d at p. 162 [243 N.E.2d at p. 74].) Thus, because it had done as much as it reasonably could do under existing postal regulations to divest itself of ownership, possession and control of the mailed materials while outside Ohio, it was "reasonable to conclude that the gift of these samples and advertising materials took place outside Ohio and such material was not stored, used or otherwise consumed by [the taxpayer] in the state of Ohio within the meaning of those words as used in Section 5741.02, Revised Code." (16 Ohio St.2d at p. 162 [243 N.E.2d at p. 75].)

What the analyses in *McGraw-Hill* and *Hoffman-LaRoche, Inc.*, have in common is the question of intent. What was McGraw-Hill's intent when it withdrew property located *inside* New Jersey from storage (which property was exempt from use tax while in storage in New Jersey) and delivered it to a common carrier for delivery to donees *outside* New Jersey? What was Hoffman-LaRoche's intent when it withdrew property located *outside* Ohio (which property was exempt from tax of any kind by Ohio) and delivered it to a common carrier for delivery to donees *inside* Ohio? The principle which unifies both cases is this: if the taxpayer's intent is to use the property in a nonexempt way, including to make a gift of it, and if the property is located *inside* the taxing state when this intent is manifested, then the property is subject to use tax. Here, like the facts in *McGraw-Hill*, and unlike the facts in *Hoffman-LaRoche, Inc.*, the property in question was located *inside* the taxing state, California, when Yamaha withdrew it from storage and, by delivering it to a common carrier for delivery to out-of-state donees, manifested an intent to use the property in a nonexempt way, in other words, to make a gift of it.

In this case, the uncontradicted evidence shows not only that Yamaha intended to make gifts of the property in question when it withdrew it from storage in California and delivered it to common carriers for delivery to out-of-state donees, but that, under the principles of gift law discussed above, such gifts were complete when Yamaha delivered the property to common carriers in California. Because giving away the property was not one of the exempted uses, Yamaha was properly liable for the applicable use tax.

Thus, our independent interpretation of sections 6008, 6009, 6009.1, 6094, 6201, 6202, and 6401 as meaning that delivery of property to a common carrier in California for delivery to an out-of-state donee shows an intent to make a gift, which is a nonexempted use of the property, is consistent with both (1) the Board's interpretation of those statutes, as expressed in Annotation No. 280.0040 (which states that a gift is regarded as being a taxable use of the property "when the donor divests itself of control over the property in this state"; *id.* at p. 3731) and Annotation No. 280.1140 (which states that stock in trade which is purchased for resale is subject to use tax if it is used instead for the purpose of making a gift, even if the donor in this state ships the gift to the donee out of state), and (2) the intent behind the California Sales and Use Tax Law (§ 6001 et seq.), which, as noted above, is to apply the use tax so as to ensure that the basic excise tax will be levied on

transactions which might otherwise inequitably escape taxation. (*Wallace Berrie & Co.* v. *State Bd. of Equalization, supra,* 40 Cal.3d at pp. 66-67.)[6]

### 5. *Yamaha Owes Use Tax on Property Which It Delivered to a Common Carrier in California for Delivery to Out-of-state Donees*

We have determined that section 6009.1 should be interpreted so that delivery in California to a common carrier of property which was purchased outside California without paying tax and stored in a taxpayer's resale inventory in a California warehouse, for the purpose and with the intent that such carrier will deliver the property to an out-of-state donee as a gift, is not an excluded action under section 6009.1. Since that section excludes from the definition of "storage" and "use," and thus from the requirement of paying a use tax (§ 6201), "the keeping, retaining or exercising any right or power over tangible personal property for the purpose of subsequently transporting it outside the state for use thereafter solely outside the state. . . ," it follows that the Board correctly determined that Yamaha owed a use tax on the ex-tax property which it delivered to a common carrier here for delivery as gifts to out-of-state donees.

### 6. *The Commerce Clause*

 Yamaha also argues that the Board's (and now our) construction of the applicable statutes is "erroneous and unauthorized" under the commerce clause of the United States Constitution. This contention fails under well-established tests for the validity of state taxation of transactions in interstate commerce.

 Under the "dormant" commerce clause, it is impermissible for states to impose taxes which burden or discriminate against interstate commerce, even if Congress has not affirmatively acted to protect interstate commerce. (*Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc.* (1995) 514 U.S.

---

[6]This interpretation of the relevant code sections allocates the burden of proof in a commonsense manner: it presumes that a gift has been made upon delivery to a common carrier because, as discussed above, the law presumes that a donee accepts a beneficial gift and further presumes, in the absence of evidence otherwise negating the evidence of donative intent and delivery for purposes of transfer to the donee, that the mere fact the donor has a right to control the carrier's activities and to recall the gift, does not affect nor invalidate the gift. It is then up to the donor, who is in the best position to produce evidence of its intent and of whether the gift was actually delivered, to rebut these presumptions by producing facts showing that, in fact, no gift was intended or made. No such evidence was presented in this case.

175, 181-182 [115 S.Ct. 1331, 1336-1337, 131 L.Ed.2d 261, 268]; *Barclays Bank PLC* v. *Franchise Tax Bd. of Cal.* (1994) 512 U.S. 298, 309-310 [114 S.Ct. 2268, 2275-2276, 129 L.Ed.2d 244, 257].) States are not prohibited from taxing interstate commerce, but each state is limited to taxing only its fair share of an interstate transaction. In *Complete Auto Transit, Inc.* v. *Brady* (1977) 430 U.S. 274 [97 S.Ct. 1076, 51 L.Ed.2d 326] (*Complete Auto*) the United States Supreme Court announced a four-prong test for the validity of a state tax levied on property in interstate commerce. Under this test, a state tax does not violate the dormant commerce clause if the tax (1) is applied to activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to services provided by the state. (*Complete Auto, supra,* 430 U.S. at pp. 287-289 [97 S.Ct. at pp. 1083-1084]; see also *Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc., supra,* 514 U.S. at pp. 183-184 [115 S.Ct. at pp. 1337-1338, 131 L.Ed.2d at pp. 270-271].)

Yamaha does not contend the tax at issue here applies to activities without a substantial nexus with the state, facially discriminates against interstate commerce or is not fairly related to services provided by the state. Rather, Yamaha asserts that taxation of gifts to out-of-state donees would violate the "fair apportionment" prong of the *Complete Auto* test, because such taxation by California would create a risk of multiple taxation. However, no such risk is created.

A state tax is considered properly apportioned under the *Complete Auto* test if each state taxes only its fair share of an interstate transaction. (*Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc., supra,* 514 U.S. at pp. 183-184 [115 S.Ct. at pp. 1337-1338, 131 L.Ed.2d at p. 271]; *Goldberg* v. *Sweet* (1989) 488 U.S. 252, 260-261 [109 S.Ct. 582, 588- 589, 102 L.Ed.2d 607].) Claims of malapportionment are assessed by asking whether a challenged tax is "internally consistent" and, if so, whether it is also "externally consistent." (*Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc., supra,* 514 U.S. at p. 184 [115 S.Ct. at p. 1338, 131 L.Ed.2d at p. 271]; *Goldberg* v. *Sweet, supra,* 488 U.S. at p. 261 [109 S.Ct. at pp. 588-589].) A tax is "internally consistent" when imposition of an identical tax by every other state would add no burden to interstate commerce that intrastate commerce would not also bear. (*Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc., supra,* 514 U.S. at pp. 183-185 [115 S.Ct. at pp. 1337-1339, 131 L.Ed.2d at pp. 271-272]; *Goldberg* v. *Sweet, supra,* 488 U.S. at p. 261 [109 S.Ct. at pp. 588-589]; *General Motors Corp.* v. *City of Los Angeles* (1995) 35 Cal.App.4th 1736, 1750 [42 Cal.Rptr.2d 430].) "External consistency" does not look to the abstract and purely logical consequences of an imagined cloning of the

challenged tax. Rather, it looks to those "less tidy" issues which concern the actual economic justification for the state's claim upon the value taxed and the actual or likely risk that the challenged tax will result in multiple taxation. (*Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc., supra*, 514 U.S. at pp. 184-185 [115 S.Ct. at pp. 1338-1339, 131 L.Ed.2d at p. 272].) This subpart of the apportionment test inquires as to whether a challenged tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing state. (*Ibid.*; *Goldberg* v. *Sweet, supra*, 488 U.S. 252 at p. 262 [109 S.Ct. at p. 589].) If it does, the apportionment prong of the *Complete Auto* test is violated. If one state's act of overreaching combines with the possibility that another state will claim its fair share of the value taxed, then that portion of value by which the first state exceeded its fair share is taxed a second time by a state properly claiming it. Such double taxation constitutes an impermissible burden upon, and discrimination against, interstate commerce. (*Goldberg* v. *Sweet, supra*, 488 U.S. at pp. 262-263 [109 S.Ct. at pp. 589-590]; *Evco* v. *Jones* (1972) 409 U.S. 91, 93-94 [93 S.Ct. 349, 350-351, 34 L.Ed.2d 325].)

■ Yamaha contends that, if a California use tax is imposed upon its gifts, a risk of impermissible double taxation will result. The risk arises, Yamaha argues, because at least three states—Illinois, New York and Washington—impose use tax on the receipt of gifts within the state. Thus, Yamaha argues, if a California taxpayer purchases property ex-tax, stores the property in California, then makes a gift of the property to a donee in Illinois, New York or Washington and sends the gift by a common carrier, an impermissible risk will be created that the taxpayer will be taxed twice on the merchandise's value. The Board disagrees and contends that (1) the Multistate Tax Compact (§ 38001 et seq.), under which the member states, including California, reciprocally grant credit against their own sales and use taxes for taxes paid on the same merchandise in another member state, protects against the risk of double taxation (see § 38006, art. V),[7] and (2) California's separate and unilateral statutory credit against tax paid in another state provides additional protection against a double tax. (See § 6406.)[8]

---

[7]Section 38006, article V, provides in pertinent part that "Each purchaser liable for a use tax on tangible personal property shall be entitled to full credit for the combined amount or amounts of legally imposed sales or use taxes paid by him with respect to the same property to another State and any subdivision thereof. . . ."

[8]Section 6406 provides in pertinent part that: "A credit shall be allowed against . . . the taxes imposed on any person . . . by reason of the storage, use or other consumption of personal property in this state to the extent that the person has paid a retail sales or use tax, or reimbursement therefor, imposed with respect to that property by any other state, political

We find the Board's argument to be the more reasonable one. While section 6406 would appear to grant a credit only for taxes paid respecting particular property "prior to" making a taxable use of the property in California, the Multistate Tax Compact, to which California is a signatory, does not include this limitation. The availability of a Multistate Tax Compact credit against state sales and use taxes for taxes paid in another state has been held to avoid the risk of multiple taxation, and thus to satisfy *Complete Auto*'s fair apportionment test. (*Goldberg* v. *Sweet, supra,* 488 U.S. at pp. 263-264 [109 S.Ct. at pp. 589-591]; *D. H. Holmes Co.* v. *McNamara* (1988) 486 U.S. 24, 31 [108 S.Ct. 1619, 1623-1624, 100 L.Ed.2d 21].)

In *D. H. Holmes Co.* v. *McNamara, supra,* 486 U.S. 24, the Supreme Court upheld a provision of Louisiana's use tax, which taxed catalogues that were produced outside of the state and mailed to customers in the state at the direction of an in-state retailer. (*Id.* at pp. 26, 34 [108 S.Ct. at pp. 1620-1621, 1625].) The court found that the Louisiana taxing scheme met the fair apportionment test, because it provided a credit against its use tax for taxes paid in other states. (*Id.* at p. 31 [108 S.Ct. at pp. 1623-1624].) The tax credit provided in the Multistate Tax Compact is identical in substance to the Louisiana tax credit approved in *D. H. Holmes.* Moreover, of the three states which Yamaha identifies as taxing the receipt of gifts within those states, one, Washington, has enacted the Multistate Tax Compact (Wash. Rev. Code, § 82.56.010), and the other two, Illinois and New York, provide credits against their sales and use taxes for sales or use tax paid in another state, although they are not members of the Multistate Tax Compact. (Ill. Rev. Stat. ch. 35, para. 105/3-55; N.Y. Tax Law § 1118(7)(a).) Yamaha has not shown that the mutual credits provided by California and its sister states for sales and use taxes paid in another state will not adequately protect against any substantial threat of multiple taxation that is created by differences in the manner in which different states tax gifts. Nor has Yamaha shown that Nevada, which Yamaha asserts has no tax credit provisions, has a use tax under which gifts received within Nevada would be taxed in such a way as to threaten double taxation of gifts from California donors. Yamaha has thus shown only a speculative possibility of multiple taxation. Such a limited possibility does not invalidate an otherwise valid statutory scheme. (*Goldberg* v. *Sweet, supra,* 488 U.S. at pp. 263-264 [109 S.Ct. at pp. 589-591].)[9]

We are therefore satisfied that an impermissible risk of multiple taxation does not and will not result from the Board's interpretation of California's

___

subdivision thereof, or the District of Columbia prior to the storage, use, or other consumption of that property in this state. . . ."

[9]Yamaha cites the recent case of *General Motors Corp.* v. *City of Los Angeles, supra,* 35 Cal.App.4th 1736, for the proposition that the mere theoretical likelihood of multiple taxation

use tax statutes, under which a gift of personal property is deemed to be made in California, and consequently California use tax is deemed to be due, if the subject property is (1) purchased without payment of sales tax, and then (2) delivered to a common carrier for transportation to a donee either inside or outside of California. Because Yamaha made gifts in this way of property on which it had not previously paid sales tax, it does not contravene the dormant commerce clause to subject the gifts to California's use tax.

In sum, taxation of the gifts is not in itself unreasonable, and such taxation contravenes no statute or rule of law. Nor is the tax unjust. Tax was properly imposed upon the gifts, and no refund is due.

### 7. Yamaha Owes Sales Tax on Promotional Literature Purchased Under Resale Certificates

 With respect to the promotional literature which Yamaha purchased under resale certificates, Yamaha plainly owed the tax claimed by the Board. Yamaha stipulated to the following facts concerning the promotional literature: "From time to time, [Yamaha] purchased merchandise ex-tax *for the purpose of giving the merchandise away as promotional gifts.*" (Italics added.) Some of this merchandise "was purchased in California by giving the seller a resale certificate." Yamaha's purchase of merchandise under resale certificates with the intent of giving the merchandise away was improper. Sales tax is owing on any sale of merchandise that is not purchased for resale. (§§ 6007, 6051; Cal. Code Regs., tit. 18, §§ 1668, 1670, subd. (a).) Since Yamaha purchased promotional literature in California with no intent of reselling it, the sale was taxable, and it was immaterial that Yamaha later gave some of the literature away out-of-state rather than in California. (§ 6094.5; Cal. Code Regs., tit. 18, § 1668, subd. (g).)

---

will render invalid under the commerce clause any statute which creates such a likelihood. (See *General Motors Corp., supra,* 35 Cal.App.4th at pp. 1749-1752.) However, Yamaha ignores the fact that the court in *General Motors Corp.* found that the tax which was challenged in that case failed *Complete Auto*'s "internal consistency" test. Under that test, a court assumes that every taxing jurisdiction imposes an identical tax, and must invalidate a tax which theoretically would result in multiple taxation under that assumption. Obviously, if every state taxed gifts, as California does, as the gifts leave the state and not upon entry, no threat of double taxation would result. Where, as here, it is claimed that a tax fails the "external consistency" test, in that multiple taxation is threatened as a result of differences between the taxing schemes in different jurisdictions, an actual or likely risk of multiple taxation must be shown to invalidate the challenged tax. (*Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc., supra,* 514 U.S. at pp. 184-185 [115 S.Ct. at pp. 1338-1339, 131 L.Ed.2d at p. 272]; *Goldberg* v. *Sweet, supra,* 488 U.S. at pp. 263-264 [109 S.Ct. at pp. 589-591].)

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to the Board.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied July 15, 1999, and respondent's petition for review by the Supreme Court was denied October 20, 1999.